**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James C. DUNKEL,**
**Defendant–Appellant.**

No. 89–1841.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1989.

Decided April 16, 1990.

Rehearing and Rehearing En Banc Denied
May 11, 1990.

John G. McKenzie, Asst. U.S. Atty., Lisa K. Osofsky, Office of the United States Attorney, Rockford, Ill., for U.S. plaintiff-appellee.

Donald W. MacPherson, MacPherson & McCarville, Phoenix, Ariz., for James C. Dunkel, defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and DUMBAULD, Senior District Judge.*

EASTERBROOK, Circuit Judge.

James C. Dunkel, a dentist, decided in 1981 that the income tax is "voluntary". So he quit filing tax returns. Just in case the IRS should take a contrary view, Dunkel also started keeping two sets of books, excluding from one any cash receipts and checks that were endorsed over to his staff to pay their salaries without going through his bank accounts. Dunkel testified that he did these things to obtain more "privacy" than the banking system affords him. The jury concluded, however, that he did these things to evade tax, and that he also wilfully failed to file his tax returns, in violation of 26 U.S.C. §§ 7201 and 7203. The district judge sentenced him to three years' imprisonment, to be followed by five years' probation.

Some of the evidence used to convict Dunkel came from his refuse, which an informant culled. After *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), there is no doubt that the contents of Dunkel's dumpster, in which financial records were mixed with worn-out teeth and discarded needles, were not within that zone of privacy to which the Fourth Amendment applies. Nonetheless, Dunkel contends that the dumpster was within the curtilage of his office, so that the informant needed a warrant (or his consent) to approach the dumpster in the first place. If the informant was not entitled to reach the dumpster, the fact that its contents had been abandoned could not justify the search. Consider the status of papers mixed with scrapings from dinner plates in a garbage bag in the kitchen. The police could not invade the home and rifle the bag, however free their access to its contents would have been, given *Greenwood*, once it was put outside.

Dunkel owned and maintained his offices in a building that housed two other dentists and five business tenants. All used the same dumpster, which was located off the parking lot of the building, more than 55 feet from the nearest part of the structure. Dunkel's patients and employees, and those visiting other tenants of the building, used the parking lot. Anyone in the parking lot could walk up to the dumpster; the trash hauler that emptied the dumpster came in through the parking lot and needed no key or other entrée. After taking evidence, the district court found that "the fact that the garbage dumpster was being shared by other tenants ... [and] was accessible to the public ... supports the finding that there was no reasonable expectation of privacy; and although this dumpster was 170 feet into the property, I think it's clear that that dumpster was accessible to the public, as much as if it were sitting in any other open lot." This finding is not clearly erroneous.

* Honorable Edward Dumbauld, of the Western District of Pennsylvania, sitting by designation.

Intoning "curtilage" does not alter the fact that the parking lot was open to all comers—not only Dunkel's invitees but also those of his seven tenants. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). See *Oliver v. United States*, 466 U.S. 170, 179–80, 104 S.Ct. 1735, 1741–42, 80 L.Ed.2d 214 (1984) ("open fields" doctrine applied despite "no trespassing" signs). Dunkel's redoubt is *United States v. Swart*, 679 F.2d 698 (7th Cir.1982), which held that agents could not enter the yard of an auto repair business to read the vehicle identification numbers from cars there. No one other than Swart and his employees had access to the fenced-in yard where the cars were kept; this is a far cry from Dunkel's open parking lot with 32 spaces used throughout the day by many strangers. Someone who tosses documents into a dumpster to which hundreds of people have ready access has no legitimate expectation of privacy in the dumpster or its contents. *United States v. Michaels*, 726 F.2d 1307, 1312–13 (8th Cir.1984), cited with approval in *Greenwood*, 486 U.S. at 42, 108 S.Ct. at 1630.

■ Only three of Dunkel's eight remaining arguments (most with multiple sub-parts) bear comment. Dunkel insists that the charges under § 7201 are duplicitous because that statute creates two crimes: evading the assessment of taxes (as by fooling the IRS about your income) and evading the payment of taxes (as by secreting assets after taxes have been assessed). To charge both in one count, Dunkel maintains, is to confuse both the defendant and the jury. Not so. Section 7201 creates only one *crime:* tax evasion. Section 7201 makes it a crime to "attempt in any manner to evade or defeat any tax imposed by this title or the payment thereof". Just as you can rob a bank in a dozen ways (blow the door off the vault, tunnel from next door and empty the till in the dead of night, stick up the teller, scoop money out of the cash drawer during business hours when no one is looking, and so

on), so you can evade taxes in multiple ways.

Sometimes it is convenient to say that different methods are different "crimes", as the Supreme Court once said about § 7201. *Sansone v. United States*, 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965); see also *United States v. Dack*, 747 F.2d 1172, 1174 (7th Cir.1984). Whether § 7201 creates multiple offenses in the sense that one who evades his taxes for a single year both by creative bookkeeping and by transferring assets (as the jury could conclude Dunkel did) could be given cumulative punishment is a different matter entirely. If Dunkel were right, he could be punished twice, so long as the government took care to charge the events of a single year in two counts. We need not decide whether Congress has authorized this. It is enough to say that nothing in the text or history of § 7201 requires an indictment to treat § 7201 as if it were two sections of the United States Code. The grand jury must let the accused know the nature and basis of the charge. Dunkel's indictment did so: it listed six specific ways in which he evaded taxes (five in 1981, three in 1983, with two methods used in each year). He knew exactly what he had to prepare to defend against, and the jury knew its role as well. *United States v. Shorter*, 809 F.2d 54, 58 (D.C.Cir.1987); *United States v. Hawkins*, 781 F.2d 1483, 1484 (11th Cir.1986).

■ Dunkel contends that 26 U.S.C. § 7203 is unconstitutionally vague because it requires a taxpayer to "make" a return. No one could understand this, Dunkel insists. Maybe it means "fill in" a return; maybe it means "send in" a return; maybe it even means "construct a return out of raw materials". The district judge thought this frivolous and threatened sanctions. Dunkel's lawyer, Donald W. MacPherson, filed in the district court a blizzard of "unnecessary, duplicative and spurious motions, causing the Court to spend valuable time searching through 110 pages of motions which appear to be 'boilerplate' motions duplicated from a word processor". Although this court's Rule 30(a) requires the appellant to attach to his brief the

opinions under review, MacPherson deleted from the district court's opinion the portion chastising him and warning that worse could follow. See *In re Becraft*, 885 F.2d 547 (9th Cir.1989).

Statutes are not unconstitutional just because clever lawyers can invent multiple meanings. It is enough that a reasonable person can see what Congress is driving at. *United States v. Powell*, 423 U.S. 87, 93, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975). Dunkel knew full well that he had to fill in a return *and* file it. He had done both through the 1980 tax year. Making a tax return is a term of art for the combination of completing and filing; any accountant or lawyer would have told Dunkel so, had he asked. (Dunkel's accountant actually completed his 1981 return; Dunkel decided not to file it.) Marginal cases of genuine ambiguity can be tackled as they arise. *United States v. Bradley*, 892 F.2d 634, 636–37 (7th Cir.1990). This is not one.

Both § 7201 and § 7203 require the district court to impose, as part of the punishment, the "costs of prosecution." Neither statute defines "costs", so courts regularly look to 28 U.S.C. § 1920 for specification of the permissible amounts. E.g., *United States v. Procario*, 361 F.2d 683 (2d Cir.1966); *United States v. Vaughn*, 636 F.2d 921, 922 (4th Cir.1980). Section 1920(3) defines "[f]ees and disbursements for printing and witnesses" as part of costs; in turn 28 U.S.C. § 1821(b) limits to $30 per day the "witness fee" an adversary must pay on top of those expenses. See *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The district court included as part of the judgment $2,037.36 in travel and subsistence costs of Terrence Catalina, the IRS case agent who was also the principal witness against Dunkel. He submits that these expenses are not allowable "costs" because Catalina is an employee of his adversary. Yet nothing in either § 1920 or § 1821 excludes a litigant's expenses in producing its employee as a witness, and 5 U.S.C. § 5537(a)(2), which prevents a federal official from receiving witness fees, does not speak to expenses. Catalina is not based in Rockford, Illinois (the site of Dunkel's trial). But for Dunkel's actions, the United States would not have incurred the expenses of transporting Catalina to Rockford and feeding and housing him there. So although no case we can find addresses the point (an oddity in view of the number of years these statutes have been in force), we hold that the "costs" reimbursable under § 1920, and therefore §§ 7201 and 7203, include the expenses of transportation and subsistence for witnesses employed by the United States. Cf. *Gleckman v. United States*, 80 F.2d 394 (8th Cir.1935).

None of Dunkel's other contentions requires comment. We were surprised to discover, however, that the district judge allowed Dunkel's lawyer to present evidence, and to argue to the jury, that a person's belief that "taxes are voluntary" is a defense to a criminal prosecution. Although only wilful evasion or failure to file is criminal, in this circuit a mistaken view of the law does not negate wilfulness if the defendant's legal belief is objectively unreasonable. E.g., *United States v. Cheek*, 882 F.2d 1263 (7th Cir.1989), cert. granted, ─ U.S. ─, 110 S.Ct. 1108, 107 L.Ed.2d 1016 (1990). Like the Lord High Executioner in the Mikado, we've "got a little list" of beliefs that are objectively unreasonable, such as that the 16th Amendment was not properly ratified and that wages are not income. See *United States v. Buckner*, 830 F.2d 102, 103 (7th Cir.1987). We add to that list the belief that payment of income taxes is "voluntary". Juries should not be invited to decide for themselves whether it is "reasonable" to believe that the income tax is voluntary. Lawyers sometimes joke that the estate tax is a "voluntary tax" in the sense that with careful planning you can avoid it. No tax is "voluntary" in the sense that if you meet the statutory criteria for its imposition, you may elect not to pay. A goodly part of the business of district courts is creating object lessons of that fact. Dr. Dunkel has become another.

AFFIRMED.