**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth H. HEDRICK,**
**Defendant–Appellant.**

No. 89–3113.

United States Court of Appeals,
Seventh Circuit.

Argued July 12, 1990.

Decided Jan. 8, 1991.

---

Richard N. Cox, Asst. U.S. Atty., Office of U.S. Atty., Danville, Ill., for plaintiff-appellee.

Sheldon Nagelberg, Chicago, Ill., for defendant-appellant.

Before CUDAHY and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

A federal grand jury indicted defendant-appellant Kenneth H. Hedrick on thirteen counts involving possession and distribution of cocaine and money laundering. In a bench trial, the judge found Hedrick guilty on all counts and entered judgment accordingly. During the trial, Hedrick moved to suppress from admission into evidence all items seized from the warrantless search of the garbage at Hedrick's residence. He did not object to the admission of evidence seized from the dumpster outside his office building.

The garbage searched at Hedrick's home was located in opaque bags inside garbage cans with closed lids. The cans were kept in the same location of Hedrick's property throughout the week, and were collected at that location by the garbage service. The police officers who testified at trial indicated that the garbage cans never moved from that spot, but that they had never seen the garbage being collected. The officers generally retrieved the garbage between nine and ten o'clock the night before the garbage service was to pick up the garbage, although they were not aware of the garbage collection schedule until after they had searched Hedrick's garbage on at least one occasion. According to the officers' testimony, they discovered the garbage collection schedule when they found a bill from the garbage service in Hedrick's garbage. To collect the garbage, the officers approached the cans from the south and hid behind trees and bushes as they approached. The cans were located on a driveway 50 feet south of the house, and 20 feet from the unattached garage. In addition, the cans were 25 to 30 feet west of the street, and 18 feet west of the public sidewalk.

The issue in this case is not whether the police may constitutionally search garbage which is placed in cans within the curtilage of a house, but whether they can do so without a warrant. The constitutionality of garbage searches has recently been the subject of opinions by both the Supreme Court and this court, which are relevant to this case.

In *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court held that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of the home. 486 U.S. at 37, 108 S.Ct. at 1627. In *Greenwood,* the police officers asked Greenwood's regular garbage collectors to give them Greenwood's garbage after they collected it. The garbage which they collected from Greenwood was in sealed, opaque bags at the curb in front of his house, where it had been placed for collection at a fixed time. The Court noted that the search and seizure of the garbage would violate the Fourth Amendment only if the defendant manifested a subjective expectation of privacy in the garbage that society would accept as objectively reasonable. 486 U.S. at 39, 108 S.Ct. at 1628. The Court held that any expectation of privacy in the garbage was not objectively reasonable in that case because of the extent to which the garbage was exposed to the public.[1] Specifically, the court noted that "[i]t is common knowledge that plastic garbage bags left on or at the side of a

---

1. The *Greenwood* Court assumed that Greenwood possessed a subjective expectation of privacy in the garbage. That element is similarly not an issue in this case. Hedrick placed the garbage in opaque bags in a garbage can with the lid closed, and kept the cans 18 feet from any public walkway. These efforts are sufficient to manifest a subjective expectation of privacy.

public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." [footnotes omitted] 486 U.S. at 40, 108 S.Ct. at 1628–29. Moreover, the garbage was placed at the curb "for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so." *Id.* Therefore, the Court held that respondents retained no reasonable expectation of privacy in the garbage deposited " 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it.' " [citation omitted] 486 U.S. at 40–41, 108 S.Ct. at 1629.

*Greenwood* is in accord with this court's earlier decision in *United States v. Kramer*, 711 F.2d 789 (7th Cir.1983), which held that "the special protection the Fourth Amendment accords people in their 'persons, houses, papers, and effects' does not extend to their discarded garbage." [citations omitted] 711 F.2d at 792. In that case, the police had seized garbage in cans that Kramer had placed by the roadside in front of his house for collection. 711 F.2d at 791–92. The cans were located just inside a knee-high chain fence that ran along the street curb. 711 F.2d at 794. This court declared that people could prevent others from viewing objects by destroying them, and that the Fourth Amendment would not extend to items discarded as garbage. 711 F.2d at 792.

The *Kramer* analysis is based upon the theories of abandonment and exposure to the public. In *Greenwood*, the Supreme Court chose not to rely on principles of abandonment in its Fourth Amendment analysis, despite the reliance on that principle by most of the circuit courts which had considered the constitutionality of garbage searches. *See Greenwood*, 486 U.S. at 41–42, 108 S.Ct. at 1629–30 and cases cited therein. As a result, the continued viability of an abandonment approach is questionable. *See Greenwood*, 486 U.S. at 51, 108 S.Ct. at 1634 (Brennan, J., dissenting) ("The Court properly rejects the State's attempt to distinguish trash searches from

other searches on the theory that trash is abandoned and therefore not entitled to an expectation of privacy."). *Kramer* also focuses, however, on the accessibility of discarded garbage to the public, because it cites examples of the need to keep things hidden from the public in order to receive Fourth Amendment protection. This analysis is consistent with *Greenwood*. Although the garbage in *Kramer* was technically on Kramer's property, it nevertheless was right at the curb of the street. Therefore, *Kramer* is virtually identical to *Greenwood* regarding the accessibility of the garbage to the public. Unlike *Greenwood*, however, *Kramer* involved garbage which was arguably within the curtilage of Kramer's house. This court did not specifically discuss the protection accorded curtilage, but did determine that the trespass by the police of a few feet upon the edge of the front yard did not violate any interest that the Fourth Amendment was designed to protect.

In a recent case, *United States v. Dunkel*, 900 F.2d 105 (7th Cir.1990), this court discussed the constitutionality of the search of a dumpster within the curtilage of an office. We noted that the dumpster, although technically within the curtilage of the office, was nevertheless accessible to all persons using the parking lot and to the other seven tenants of the office building. 900 F.2d at 106–07. As a result, we held that the contents of the dumpster were knowingly exposed to the public.

The present case provides this court with a situation in which the garbage cans are located halfway up the driveway of a residential home, somewhat nearer the sidewalk than the garage. Therefore, the court must determine whether the garbage cans were within the curtilage and whether that affects the applicability of *Greenwood*.

■ At common law, the curtilage is the area encompassing the intimate activity associated with the sanctity of the home and the privacies of life. *California v. Ciraolo*, 476 U.S. 207, 212, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986). As a result, "[t]he

protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." 476 U.S. at 212, 106 S.Ct. at 1812. The Supreme Court has declared in numerous cases that the boundary of the curtilage is clearly marked for most homes as the area around the home to which the activity of home life extends. *Dow Chemical Co. v. United States*, 476 U.S. 227, 236, 106 S.Ct. 1819, 1825, 90 L.Ed.2d 226 (1986); *United States v. Dunn*, 480 U.S. 294, 302, 107 S.Ct. 1134, 1140, 94 L.Ed.2d 326 (1987); *Oliver v. United States*, 466 U.S. 170, 182 n. 12, 104 S.Ct. 1735, 1743 n. 12, 80 L.Ed.2d 214 (1984). Those cases have recognized that the yard of a residential home is within the curtilage of the house. Therefore, the garbage cans located 20 feet from the garage and approximately 50 feet from the back door of the house were technically within the curtilage of the home, in which privacy expectations are most heightened.

The mere intonation of curtilage, however, does not end the inquiry. *See United States v. Dunkel*, 900 F.2d 105, 107 (7th Cir.1990). The Supreme Court declared in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) that "[w]hat a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection"; hence, views by police of enclosed backyards from airplanes do not violate the Fourth Amendment because the yard is readily visible to anyone glancing down from an airplane. *Ciraolo*, 476 U.S. at 213–14, 106 S.Ct. at 1812–13. The visibility of the yard to the public and the routine nature of air flights renders the expectation of privacy unreasonable. Similarly, containers or sheds within the curtilage would not be protected if their contents could be viewed by people routinely passing on the street or overhead.

The Court has never indicated, however, that a container such as a backpack which was placed at the side of a driveway within the curtilage of a house could be searched without a warrant; in fact, caselaw indicates that such a container could not be searched because its contents are not in plain view and have not been knowingly exposed to the public. We must now determine, however, whether that container may be searched if it is a garbage can. The result can differ only if there is something in the nature of a garbage can which results in the exposure of its contents to the public.

The obvious distinction between garbage cans and other containers is that it is "common knowledge" that members of the public often sort through other people's garbage, and that the garbage is eventually removed by garbage collectors on a regular basis. *Greenwood*, 486 U.S. at 40, 108 S.Ct. at 1628. Therefore, in order to extend *Greenwood* to this situation, we must determine that the garbage at this location was still readily accessible to the public, or that the intent eventually to convey the garbage to the garbage collector is itself sufficient to eliminate any expectation of privacy in garbage. The latter option is not consistent with Supreme Court protection of the curtilage and with its opinion in *Greenwood*. For instance, the Supreme Court continues to discuss the protection accorded the curtilage even though it has rejected the notion that property law defines the contours of Fourth Amendment protection. A determination, however, that garbage placed in cans for ultimate collection is unprotected by the Fourth Amendment would allow police officers to inspect cans placed next to the garage or the house itself without any showing of probable cause or any warrant, and without regard to the accessibility of the cans to the public as a whole. This result would be inconsistent with the purpose of the Fourth Amendment to protect the home and the area surrounding it from arbitrary searches. Moreover, such a holding would be inconsistent with the language in *Greenwood*. The *Greenwood* Court did not base its decision solely upon the conveyance of the garbage to the collector. This was true even though the garbage collectors in that case actually collected the respondents' garbage at the usual time, and then conveyed it to

the police.[2] Finally, the Court has never held that the intent to convey an object or conversation to a third-party renders any expectations of privacy unreasonable simply because the third-party could then convey the object or information to the police.

Therefore, the proper focus under *Greenwood* is whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable. This principle is not without any limit. The willingness of members of the public to trespass upon private property in order to search through garbage cans cannot automatically defeat the Fourth Amendment expectation of privacy any more than a series of burglaries could eliminate any expectation of privacy in the home. Where, however, the garbage is readily accessible from the street or other public thoroughfares, an expectation of privacy may be objectively unreasonable because of the common practice of scavengers, snoops, and other members of the public in sorting through garbage. In other words, garbage placed where it is not only accessible to the public but likely to be viewed by the public is "knowingly exposed" to the public for Fourth Amendment purposes.

■ This case presents a middle ground in which the answer to this question is not self-evident. If the garbage is placed at the curb, the public has ready access to it from the street, and in fact can be expected to utilize that ability. On the other hand, garbage cans placed next to the house or the garage are not so accessible to the public that any privacy expectations are objectively unreasonable. *See United States v. Certain Real Property Located at 987 Fisher Road*, 719 F.Supp. 1396 (E.D. Mich.1989) (court held that garbage bags against the back wall of a house were protected from warrantless search). The garbage cans in this case were permanently located at the side of the driveway, somewhat closer to the public sidewalk than the garage. In order to view the contents of the cans, "children, snoops, scavengers or other members of the public" would have to walk 18–20 feet from the sidewalk. Apparently, at least part of the driveway was visible from the house, because the officers that removed the garbage hid behind bushes and trees in approaching the cans. The cans themselves, however, could not be seen from the house because trees and bushes blocked the view from the back of the house.

The *Kramer* decision precludes a bright-line rule that garbage within the curtilage is protected, because the court in that case assumed that the police had to intrude a few feet into the curtilage in order to collect the garbage. In any case, while the boundaries of the curtilage roughly correspond to areas to which the public would not routinely have access, this correlation is not complete and does not end the Fourth Amendment analysis. Therefore, applying the *Greenwood* analysis to garbage within the curtilage, the relevant inquiry is whether the garbage cans were so readily accessible to the public that they exposed the contents to the public for Fourth Amendment purposes. Because the distance between the garbage cans and the public sidewalk was relatively short, the garbage was collected by the garbage service from that location, and the garbage cans were clearly visible from the sidewalk, we hold that Hedrick possessed no reasonable expectation of privacy in the garbage. As a general rule, the reasonableness of the expectation will increase as the garbage gets closer to the garage or house. In this case, the garbage was right in the middle of the driveway, and the proximity of the garbage cans to the sidewalk and the absence of a fence or any other barrier indicates that the garbage was knowingly exposed to the public. Accordingly, the decision of the district court denying the motion to suppress, and the conviction, is

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

The contents of our garbage cans may be unvalued trash, but it is nonetheless *our*

---

**2.** In the present case, the police collected the garbage themselves between nine and ten o'clock at night before the regular garbage pickup the next morning.

unvalued trash. Hedrick had a reasonable expectation of privacy in his garbage and the clandestine searches involved here violated his rights. In fact, the detectives' stealth in conducting these searches is one indicator of their impropriety. Trash at curbside would not have required the officers to proceed in secret, sneaking up under cover of a hedge to snatch the garbage. If the garbage was, as the majority asserts, "readily accessible" to the public, at 400, I do not understand why—in Army jargon—a "tactical" approach to it by the police was required. Apparently, this garbage was readily accessible only to searchers equipped with binoculars and x-ray vision.

Nor is Hedrick's voluntary relinquishment of his garbage of consequence. As Justice Brennan observed in dissent in *Greenwood:*

> More importantly, even the voluntary relinquishment of possession or control over an effect does not necessarily amount to a relinquishment of a privacy expectation in it. Were it otherwise, a letter or package would lose all Fourth Amendment protection when placed in a mailbox or other depository with the "express purpose" of entrusting it to the postal officer or a private carrier; those bailees are just as likely as trash collectors (and certainly have greater incentive) to "sor[t] through" the personal effects entrusted to them, "or permi[t] others, such as police to do so."

*California v. Greenwood,* 486 U.S. 35, 55, 108 S.Ct. 1625, 1637, 100 L.Ed.2d 30 (1988) (Brennan, J., dissenting) (quoting majority opinion). The trash collector's scheduled collections of the searched material does not therefore render the privacy expectation unreasonable.

I.

To me, prior holdings do not control this situation. The fact that the trash was clearly *within* Hedrick's property, not on the edge, distinguishes the case from *Greenwood,* where the trash was left at curbside, and from *United States v. Kramer,* 711 F.2d 789 (7th Cir.1989), where the

trash was also at the curb but inside a knee-high fence. In these cases the *place* where the garbage was located, and not its status as "lowly" garbage, seemed to lessen the expectation of privacy. *See Greenwood,* 486 U.S. at 40, 108 S.Ct. at 1628 (trash was *"at the curb* for the express purpose of conveying it to a third party" (emphasis added)). The trash's location permitted public inspection. "[H]aving deposited their garbage 'in an area particularly suited *for public inspection* and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded." *Id.* at 40–41, 108 S.Ct. at 1628–29 (emphasis added; citing *United States v. Reicherter,* 647 F.2d 397, 399 (3d Cir.1981)). In short, I do not agree that *Greenwood* or *Kramer* controls the situation where the trash is well within one's property. Here, the trash may even have been closer to the garage than the street, Tr. at 145 (testimony of Detective Nearing), and the zone of privacy surrounding the house included the trash. And in neither *Greenwood* nor *Kramer* was a surreptitious approach by searchers to the garbage required.

This case is difficult to distinguish from one in which garbage is immediately adjacent to the house. *See United States v. Certain Real Property Located at 987 Fisher Road,* 719 F.Supp. 1396 (E.D.Mich. 1989); *People v. Edwards,* 71 Cal.2d 1096, 458 P.2d 713, 80 Cal.Rptr. 633 (1969). To me, there is no principled basis separating Hedrick's case from one in which garbage is kept on the back porch, although there *is* a distinction between garbage placed at curbside—discussed in *Greenwood* and *Kramer*—and garbage kept well within the outer edges of the defendant's property. While additional factors may lessen the expectation of privacy for objects as close to the house as Hedrick's garbage, they are certainly not apparent here.

In sum, the rationale that explains the absence of an expectation of privacy at the curbside is not that the garbage is soon to be picked up but simply that it is *near the road.* Proximity to the street, combined

with the release of garbage into the public domain, are both essential to finding unreasonable an expectation of privacy. Either factor alone is not enough, implying that Hedrick's expectation is not unreasonable merely because it was his unvalued refuse that was seized.

## II.

Each of the majority's contentions fails to provide an adequate basis for the warrantless search. First, the majority argues that the "common practice of scavengers, snoops and other members of the public in sorting through garbage" makes the expectation of privacy unreasonable. The same, it appears, could be said of garbage propped against the back wall of a house (or contained in a living-room waste basket), which a snoop may feel justified in examining. Garbage left at the curb may indeed be susceptible to inspection by scavengers, snoops and other members of the public, but this susceptibility does not in itself define the extent of a reasonable expectation of privacy.

Further, even if we accept this standard, Hedrick's garbage apparently was not susceptible to easy inspection by scavengers, snoops and other members of the public. As we have noted, the police officers seizing the evidence had to proceed, like soldiers advancing under fire, behind cover of hedge to secure the evidence; presumably, they feared that their being sighted by Hedrick would alert him to their search. In short, the "scavengers, snoops and other members of the public" rationale fails because its net casts too broadly in some cases and not broadly enough in others. Some snoops may wander into another's garage, clearly within the range of a reasonable expectation of privacy, while the curbside garbage of a country homeowner—distant from urban interlopers like snoops and scavengers—does not for this reason enjoy heightened protection.

Finally, the cases relied on by the majority refer to incomparable types of property and are inapposite. Thus, I am not persuaded by *United States v. Dunkel*, 900 F.2d 105 (7th Cir.1990), which the majority uses for the proposition that property inside the curtilage (there, a dumpster on a business premises) may not be within the zone where privacy can reasonably be expected. In *Dunkel*, the dumpster sat off a parking lot and was some 55 feet from the building. 900 F.2d at 106. Hedrick's driveway was not a parking lot; his residence, not a business; and his garbage, not so clearly exposed to the public.

The majority likewise misplaces its reliance on the "view" rationale of *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). *Ciraolo* relies explicitly on the availability of the defendant's premises for inspection by anyone flying overhead—no zone of privacy protects the homeowner from overhead "view." This, it seems to me, is clearly distinguishable from Hedrick's situation. Hedrick's garbage was a substantial distance from the curb. It was in opaque, covered containers. It was near the house and garage and it created enough anxiety in the detective that she had to proceed by hiding behind the bushes. In short, the only way that it was "exposed" to the public was that it took the lowly form of garbage awaiting collection, a rationale eschewed by the Court in *Greenwood*.

## III.

Hedrick's garbage cans were well within the private portion of his property, and the garbage was not exposed to public view. The curtilage of Hedrick's house included the garbage, and the material was not, like an open back yard from the air, subject to ready public inspection. Requiring police to secure a warrant before seizing such evidence is a minimal burden that protects a homeowner's valued zone of privacy.

I respectfully dissent.