UNITED STATES of America,
Plaintiff–Appellee,

v.

Booker T. SHANKS, also known as
Willie Shanks, Defendant–
Appellant.

No. 96–1578.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 3, 1996.

Decided Oct. 9, 1996.

Pamela Pepper, Michelle Leslie (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

David E. Lowe (argued), Hachey & Lowe, Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Booker T. Shanks ("Shanks") was convicted by a jury of (1) knowingly and intentionally possessing with the intent to distribute heroin and of (2) knowingly and intentionally possessing with the intent to distribute heroin, within 1,000 feet of a school, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 860(a), respectively. Shanks filed a pretrial motion to dismiss count one, for the reason that it was multiplicitous of the charged conduct in count two, and to suppress evidence obtained through a warrantless search of his garbage. Although the district court denied both of these motions

(after conducting a *de novo* review of the record and of the magistrate judge's recommendation to deny the motions), at sentencing the district court dismissed count one and sentenced Shanks to serve 87 months' imprisonment on count two. On appeal, Shanks again challenges the constitutionality of the warrantless search and the constitutionality of trying him for multiplicitous charges. In addition, he claims that there was insufficient evidence to convict him for being a distributor of heroin, arguing that, at most, the evidence demonstrated he possessed heroin for personal use.[1]

I.

After receiving an anonymous tip that someone was dealing drugs from Shanks' residence located on the upper floor of a two-story duplex condominium, the police attempted to corroborate the tip by looking for evidence of drug activity in the garbage containers located next to the garage which was approximately twenty feet away from Shanks' residence. The garbage containers were located on the narrow strip of land that occupied the space between the garage and the alley. The police confiscated the garbage containers in the early hours of the morning and replaced them with identical containers so that no one would notice. They then investigated the contents of the confiscated garbage containers including opaque bags that were either tied or sealed with metal twist-ties. Inside these bags the police discovered drug paraphernalia and other incriminating evidence, including pieces of aluminum foil that tested positive for the presence of heroin. The police subsequently used this evidence along with the informant's tip to secure a search warrant for the Shanks household.[2]

Upon executing the search warrant, the police found Shanks at home along with Susan Lee, Shanks' wife. The police found $860 and a small quantity, a user amount, of

---

1. We remind Shanks' counsel of his responsibility under Federal Rule of Appellate Procedure 30 to attach a copy of the adverse order or opinion from which he is appealing to the defendant-appellant's brief. *See In re Galvan,* 92 F.3d 582, 584 (7th Cir.1996).

2. Shanks maintains that the evidence discovered in his residence should also be suppressed because the evidence obtained from the allegedly unconstitutional garbage search was used to support the application for the search warrant.

heroin in Shanks' pants pockets. On the dining room table, the officers found three rolled-up aluminum foil packets that contained a brown, powdery substance, suspected to be heroin. Next to the three rolled-up foil packets were thirty-two unused foil squares. In the living room, officers found an empty aluminum foil carton, a plate tipped over on the floor, a pager, and some keys. In addition, the police searched Shanks' bedroom, where they found two plastic bags behind one of the mirrored panels on the bedroom dresser. One of the bags contained a black, tar-like substance suspected of being heroin, and the other contained twenty rolled-up foil packets, each containing a brown, powdery substance suspected of being heroin. Near this stash of what appeared to be a dealer's supply of heroin, officers also found an envelope addressed to Ms. Lee.

After advising Shanks of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the police questioned him regarding the heroin. Shanks admitted to purchasing some heroin that day for his personal use, and that the three packets of heroin on the dining room table were his, but he denied any knowledge of the drug paraphernalia or of the supply of heroin packets found in the bedroom. A police officer testified that Shanks also admitted to being a dealer for the past four years. When Shanks denied this at trial, the government noted that this was not the only inconsistency in Shanks' testimony. The jury responded by returning guilty verdicts against Shanks on both of the two counts charged in the indictment.

## II.

■ In *California v. Greenwood*, 486 U.S. 35, 37, 108 S.Ct. 1625, 1627, 100 L.Ed.2d 30 (1988), the Supreme Court held that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of the home. The garbage containers in *Greenwood* were located at the curb in place for collection at a fixed time. *Id.* at 39, 108 S.Ct. at 1628. As in this case, the evidence which was collected from Greenwood's garbage was

found inside sealed, opaque bags. *Id.* The Court held that any expectation of privacy in the garbage was not objectively reasonable because of the extent to which the garbage was exposed to the public. *Id.* Specifically, the Court noted that "[i]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id.* at 40, 108 S.Ct. at 1629 (footnotes omitted). Moreover, the garbage was placed at the curb "for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so." *Id.*

In the present case, the magistrate and district judges found that the garbage containers also lay outside the curtilage and that Shanks had no reasonable expectation of privacy in his garbage. In order to prevail, Shanks must show that these findings are clearly erroneous. *See Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). In regard to the first finding, Shanks appears to argue that his garbage containers did lie within the curtilage of his home because they were located next to his garage. But Shanks' garbage containers were also located adjacent to the alley, and thus, we reject his argument and note that this case is not significantly distinguishable from the situation presented in *Greenwood,* where the Court found that curb-side garbage was located outside the curtilage of the defendant's home.

■ Even assuming that the garbage containers were within the curtilage of Shanks' home, *see United States v. Pace,* 898 F.2d 1218, 1228 (7th Cir.1990) ("A home's 'curtilage' is the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home."), Shanks cannot show that the district court's additional finding (that he did not hold a reasonable expectation of privacy in the garbage) is clearly erroneous. Indeed, the mere intonation of curtilage does not end the inquiry. In *United States v. Hedrick,* 922 F.2d 396 (7th Cir.1991), we

noted that Fourth Amendment issues do not depend solely on curtilage. *Id.* at 400. Still, we refrained from establishing a *per se* rule justifying all garbage can searches:

A determination, however, that garbage placed in cans for ultimate collection is unprotected by the Fourth Amendment would allow police officers to inspect cans placed next to the garage or the house itself without any showing of probable cause or any warrant, and without regard to the accessibility of the cans to the public as a whole.

*Id.* Thus, we found that the relevant inquiry is "whether the garbage cans were so readily accessible to the public that they exposed the contents to the public for Fourth Amendment purposes." *Id.* We further explained that where garbage is readily accessible from the street or other public thoroughfares, an expectation of privacy may be objectively unreasonable because of the common practice of scavengers, snoops, and other members of the public in sorting through garbage. *Id.*

Because the garbage cans in this case were readily accessible and visible from a public thoroughfare, the alley, and because it is common for scavengers to snoop through garbage cans found in such alleys, we agree that Shanks could harbor no reasonable expectation of privacy since the garbage was essentially exposed to the public. Indeed, such a result is not only consistent with *Hedrick* but also with the even more analogous reasoning applied in *United States v. Dunkel,* 900 F.2d 105, 107 (7th Cir.1990). In *Dunkel,* this court upheld the constitutionality of the search of a dumpster located in the parking lot of a multi-tenant office building. We noted that the dumpster, although technically within the curtilage of the office, was nevertheless accessible to all persons. Therefore the defendant's expectation of privacy was unreasonable since the contents in the dumpster were knowingly exposed to the public. *Id.* at 107–108.

■ Furthermore, Shanks cannot claim an expectation of privacy (that society would accept as objectively reasonable) merely because it was the police, rather than the regular garbage service, who rummaged through his garbage. Once he placed his contraband-containing bags in the garbage containers located adjacent to a public thoroughfare, he exposed them to the public-at-large, including the police. *See Greenwood,* 486 U.S. at 39–40, 108 S.Ct. at 1628–29. We also reject Shanks' claim that the findings below were clearly erroneous because the incriminating evidence was located in sealed, opaque bags. Indeed, the incriminating evidence was also hidden in opaque bags inside the garbage containers in *Greenwood,* and this fact did not change the Court's decision to uphold the search. *Id.* Moreover, the mere fact that an individual has taken measures to restrict some views of his activities does not preclude a police officer's observations from public vantage points where he has a right to be and which renders activities clearly visible. *See California v. Ciraolo,* 476 U.S. 207, 215, 106 S.Ct. 1809, 1814, 90 L.Ed.2d 210 (1986) (upholding warrantless aerial observation of marijuana in a fenced-in backyard within curtilage of home). Hence, in these circumstances, Shanks' attempt to conceal the contents in the opaque bags is without significance. Again, once Shanks put the contraband-containing bags in the garbage containers located next to (or in) a public thoroughfare readily accessible to the public, he could not hold a reasonable expectation of privacy in their contents. Accordingly, Shanks has failed to show that the findings below are clearly erroneous.

### III.

■ Shanks also claims that he was unfairly prejudiced because he was indicted and tried for violating both § 841(a)(1) and § 860(a). Shanks maintains that the § 841(a)(1) charge is a lesser-included offense of the § 860(a) charge because the § 860(a) charge only adds the element of being within 1,000 feet of a school. *See* 21 U.S.C. §§ 841(a)(1), 860(a). Shanks argued in his pre-trial motion that the jury would be confused by the multiplicitous charges and thus that one of the counts should be dismissed before trial. On appeal, Shanks maintained that this prejudice was not alleviated when the district court dismissed the

§ 841(a)(1) count after the jury returned a guilty verdict on both counts.

We first point out that Shanks does not argue that he was subjected to double jeopardy. Indeed, such a claim would be meritless since Shanks cannot show that he was subjected to two "punishments" as required to sustain a double jeopardy suit in these circumstances. *See United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549 (1996). Shanks essentially raises (though he does not specifically characterize it as such) a due process challenge—that because of the undue prejudice caused by the multiplicitous charge, the jury could not render a fair and impartial decision. Because Shanks' pre-trial motion to dismiss the multiplicitous charge was denied, he contends that the members of the jury may have drawn the conclusion that his conduct was substantially more serious than they would have if only one count was before them on the verdict form.

The government maintains that any prejudice suffered was sufficiently ameliorated since the district court dismissed the first count before sentencing and only convicted him of violating § 860(a). Shanks disagrees, arguing that the retrospective dismissal of the first count could not remove the prejudice to the jury's pre-verdict reasoning.

Even assuming Shanks is correct that this pre-sentence dismissal of count one was non-ameliorative, we find that Shanks has not suffered undue prejudice sufficient to challenge his conviction under due process principles. In *Ball v. United States,* 470 U.S. 856, 859, 105 S.Ct. 1668, 1670, 84 L.Ed.2d 740 (1985), the Court held that a defendant may be charged and tried, though not convicted, under 18 U.S.C. § 922(h)(1) and 18 U.S.C. app. § 1202(a)(1), which prohibit, in a partially overlapping manner, the unlawful receipt and the unlawful possession of firearms. Similarly, we find no prejudice in charging Shanks with two counts that may be viewed as a greater and a lesser-included offense. Nevertheless, we are mindful of Justice Stevens' concurrence in *Ball* expressing concern

that a defendant could be prejudiced if a jury attempts to reach a compromise verdict when required to consider multiplicitous counts. *Id.* at 867–68, 105 S.Ct. at 1674–75 (Stevens, J., concurring). Unlike the situation contemplated by Justice Stevens in *Ball,* however, there is no indication that here the jury was forced to reach a compromise verdict. Moreover, we reject Shanks' argument that the verdict form[3] gave the impression that Shanks was being tried for more extended criminal conduct than if he were only charged on one count. Hence, we conclude that Shanks did not suffer undue prejudice from the multiplicitous charges.

IV.

■ This court must also determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Stribling,* 94 F.3d 321, 324 (7th Cir.1996). Shanks argues that the evidence was insufficient to prove his intent to distribute heroin, rather than merely to possess it for personal use. The evidence presented to the jury included testimony that police officers discovered Shanks had a large amount of cash on his person; that the police found three rolled-up aluminum foil packets containing heroin located next to thirty-two unused foil squares; that a pager was also located near an empty foil carton in the living room; that a supply of rolled-up foiled packets containing heroin were found in Shanks' bedroom, and that he admitted to the arresting officer that he was a drug dealer. This evidence, in addition to the drug paraphernalia found in Shanks' garbage, is sufficient to support the jury's verdict finding Shanks guilty beyond a reasonable doubt of possessing contraband with the intent to distribute. Moreover, as Shanks does not dispute that his residence was within 1,000 feet of a school, the jury could rationally find him guilty of violating § 860(a).

---

**3.** The verdict form asked whether the jury found Shanks guilty of violating § 841(a)(1), and if so, whether the offense occurred within 1,000 feet of a school.

For all the foregoing reasons, we AFFIRM.[4]

---

4. We deny Shanks' last minute motion to appoint him new counsel on appeal since he has not demonstrated a conflict of interest or any other reason that would make it impossible for his appointed attorney to present Shanks' appeal fairly.