**UNITED STATES of America, Plaintiff,**

v.

**Allan Dale LONG, a/k/a "Tiny," Defendant.**

**No. 96–40046–01–SAC.**

United States District Court, D. Kansas.

Dec. 10, 1997.

---

Charles D. Dedmon, David J. Phillips, Office of Federal Public Defender, Topeka, KS, for defendant.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On October 23, 1997, the grand jury returned a two count superseding indictment against Allan Dale Long. Count 1 charges Long with possession with intent to distribute 129 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Count 2 charges Long with felon in possession of firearms in violation of 18 U.S.C. § 922(g).

This case comes before the court upon Long's "Motion to Suppress" (Dk.20). In his motion, Long essentially argues that the police violated his Fourth Amendment rights when they "unlawfully trespassed onto the curtilage of the premises at 2400 SE Michigan when they collected trash from which the probable cause for the search warrant was derived." Long acknowledges that even if the trash was within the curtilage of his home, he must nevertheless demonstrate that he retained a reasonable expectation of privacy to the contents of those bags. Based upon his evaluation of the facts, Long contends that he enjoyed such an expectation. "The bags placed against the back of the residence were never 'conveyed' to the trash collector." Long's brief concludes:

> The limited authorization to the [trash] collector to enter the property neither authorizes the police to enter the home or curtilage of the home. The bags on the top of the trailer were exposed to the air, but not to the public. Most citizens would consider it an affront if strangers walked onto their property and opened bags on the property. Even more of an affront would it be were the strangers to steal the bags. Sheer affrontery would it be for the police to steal bags purposely placed out of reach.

Long's "Memorandum of Law in Support of Motion to Suppress" (Dk.21) at 4.

The government responds, arguing that Long enjoyed no expectation of privacy in the trash which officers seized. According to the government's response, Officer Tom Pfortmiller of the Topeka Police Department received an anonymous complaint that drug trafficking was occurring at 2400 S.E. Michigan in Topeka, Kansas. Pfortmiller's subsequent investigation indicated that the water service to that residence was in the name of Allan Dale Long, a person who had been arrested on two previous occasions on drug trafficking charges. According to the government's brief, the trash that was seized was perched upon a small trailer located

about three feet from an alley that ran along the east side of the residence's attached garage. The trailer was approximately seven feet from the east side of the garage. Based upon its appearance and proximity to the alley, Officer Pfortmiller believed that the trash was placed there for trash collectors to pick up. The government contends that the trash was not within the curtilage of the home, but "was located just about as far from home as it could be given the layout of the property." Even if the trash was technically within the curtilage of the home, the government contends that Long did not have a reasonable expectation in the privacy of the trash.

The search of the trash proved valuable. "Proving the adage that one man's trash is another man's treasure, Officer Pfortmiller discovered items associated with drug trafficking and amphetamine residue." That information, in part, formed the basis of his application for a search warrant for 2400 Michigan. Methamphetamine and firearms were seized during the execution of the search warrant.

### Legal Standards

In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court held that a warrantless search and seizure of garbage left in opaque plastic bags on the curb in front of, but outside the curtilage of, a private house did not violate the Fourth Amendment. The Supreme Court held that such a search would only violate the Fourth Amendment if the persons discarding the garbage manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable. *Greenwood,* 486 U.S. at 39.

In *Greenwood,* law enforcement officers had on two separate occasions asked the neighborhood's regular trash collector to pick up and turn over to them the plastic garbage bags which had been left on the curb in front of the house in which Greenwood lived. The officers' search of the garbage proved successful, revealing items consistent with narcotics trafficking. The items seized formed the basis for affidavits in support of warrants to search Greenwood's home. Law enforcement officers discovered narcotics during both searches, and Greenwood subsequently moved to suppress the evidence as fruits of warrantless searches. The Supreme Court found that by disposing of the garbage in opaque plastic bags, Greenwood demonstrated a subjective expectation of privacy in the discarded garbage. *Greenwood,* 486 U.S. at 39. However, the Court concluded that Greenwood had exposed his garbage to the public sufficiently to render his subjective expectation of privacy objectively unreasonable. *Greenwood,* 486 U.S. at 40.

In reaching that conclusion, the Supreme Court stated:

It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. (Citation omitted). Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," *United States v. Reicherter,* 647 F.2d 397, 399 (C.A.3 1981), respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*California v. Greenwood,* 486 U.S. 35, 40–41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

### Curtilage

"The Fourth Amendment protects the home and its curtilage from warrantless searches and seizures." *United States v. Swepston,* 987 F.2d 1510, 1513 (10th Cir. 1993) (citing *United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). "[W]hat comprises curtilage is a question of fact." *Swepston,* 987 F.2d at 1513.

"[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as

the home itself." [*Dunn*, 480 U.S. at 300] (citing *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984)). In *Dunn*, the Court held that the central component of this inquiry— "whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life"—is resolved with particular reference to four factors. *Id.* These factors are:

(1) the proximity of the area claimed to be curtilage to the home,

(2) whether the area is included within an enclosure surrounding the home,

(3) the nature of the uses to which the area is put, and

(4) the steps taken by the resident to protect the area from observation by people passing by.

*Swepston*, 987 F.2d at 1513–14.

### Burden of Proof

"The proponent of a motion to suppress bears the burden of proof." *United States v. Madrid*, 30 F.3d 1269, 1274 (10th Cir.) (citing *United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir.1991), cert. denied, 513 U.S. 1007, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994); see *United States v. Moore*, 22 F.3d 241, 243 (10th Cir.), cert. denied, 513 U.S. 891, 115 S.Ct. 238, 130 L.Ed.2d 161 (1994); cf., *United States v. Carhee*, 27 F.3d 1493, 1497 (10th Cir.1994)) ("As to the warrantless encounter, [the defendant] bears the burden of proving whether and when the Fourth Amendment was implicated (i.e., the point at which he or his luggage was 'seized').").

### Analysis

■ Based upon the evidence presented and the applicable law, the court denies Long's motion to suppress. The question of whether the seized trash was within the curtilage of Long's residence is a close one. The small trailer [1] upon which the trash was

resting was only three feet from the alley and about seven or eight feet from the rear of the attached garage. As a practical matter, the trailer was positioned as close to the public alleyway as it could have been without actually resting in the alley. No fence or similar barrier surrounded the trailer. Anyone passing down the alley could easily have reached out and snatched the trash from its rusty perch. Nevertheless, it appears undisputed that the trailer was actually within the boundary of the property and somewhat close to the garage. On a close call, the court concludes that the trailer was not within the curtilage of Long's residence.

■ In any event, whether or not the trailer was within the curtilage of the home, it is clear that Long did not enjoy a reasonable expectation of privacy in the trash placed upon the trailer. After dogs and other "varmits" had rummaged through his trash, Long began placing his refuse on the trailer so that it would not be torn apart by animals espying a tasty meal. Although Long and the person actually collecting the trash had apparently come to an express agreement that the trash on the trailer was for collection and that other bags near the garage or house were not, anyone passing by the trailer would reasonably conclude that the bags were placed there for subsequent trash collection. During this investigation such a belief was in part confirmed, as officers noted that trash previously placed on the trailer, trash seen before the seizure of the trash that is the subject of this motion to suppress, had apparently been collected by trash collectors.

In *United States v. Shanks*, 97 F.3d 977 (7th Cir.1996), cert. denied, — U.S. —, 117 S.Ct. 1002, 136 L.Ed.2d 881 (1997), a case bearing many similarities the case at bar, the Seventh Circuit recently considered the issue of whether a person retains a reasonable expectation of privacy in trash within the curtilage of the home.

---

1. In his motion to suppress, Long suggested that the trailer, which is about nine feet by 5 1/2 feet, was "also a home." No evidence supported that assertion. The trailer appears to be made from the bed of a small pickup. Although a camper top covers the small trailer, the trailer was apparently not used as a living quarters at any time. Given the comparatively large size of

"Tiny" Long, it is doubtful that he could have comfortably fit within the small confines of the trailer. Instead, the trailer, when not been used as a pedestal for trash, was primarily used for moving items.

A copy of the photograph of the trailer received into evidence as Government Exhibit # 8 has been scanned into this opinion:

After receiving an anonymous tip that someone was dealing drugs from Shanks' residence located on the upper floor of a two-story duplex condominium, the police attempted to corroborate the tip by looking for evidence of drug activity in the garbage containers located next to the garage which was approximately twenty feet away from Shanks' residence. The garbage containers were located on the narrow strip of land that occupied the space between the garage and the alley. The police confiscated the garbage containers in the early hours of the morning and replaced them with identical containers so that no one would notice. They then investigated the contents of the confiscated garbage containers including opaque bags that were either tied or sealed with metal twist-ties. Inside these bags the police discovered drug paraphernalia and other incriminating evidence, including pieces of aluminum foil that tested positive for the presence of heroin. The police subsequently used this evidence along with the informant's tip to secure a search warrant for the Shanks household.

97 F.3d at 978. The district court found that the garbage containers were located outside the curtilage and that Shanks had no reasonable expectation of privacy in the garbage. The Seventh Circuit affirmed:

> In regard to the first finding, Shanks appears to argue that his garbage containers did lie within the curtilage of his home because they were located next to his garage. But Shanks' garbage containers were also located adjacent to the alley, and thus, we reject his argument and note that this case is not significantly distinguishable from the situation presented in Greenwood, where the Court found that curbside garbage was located outside the curtilage of the defendant's home.
>
> Even assuming that the garbage containers were within the curtilage of Shanks' home, see *United States v. Pace*, 898 F.2d 1218, 1228 (7th Cir.1990) ("A home's 'curtilage' is the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home."),

Shanks cannot show that the district court's additional finding (that he did not hold a reasonable expectation of privacy in the garbage) is clearly erroneous. Indeed, the mere intonation of curtilage does not end the inquiry. In *United States v. Hedrick*, 922 F.2d 396 (7th Cir.1991), we noted that Fourth Amendment issues do not depend solely on curtilage. *Id.* at 400. Still, we refrained from establishing a per se rule justifying all garbage can searches:

> A determination, however, that garbage placed in cans for ultimate collection is unprotected by the Fourth Amendment would allow police officers to inspect cans placed next to the garage or the house itself without any showing of probable cause or any warrant, and without regard to the accessibility of the cans to the public as a whole.

*Id.* Thus, we found that the relevant inquiry is "whether the garbage cans were so readily accessible to the public that they exposed the contents to the public for Fourth Amendment purposes." *Id.* We further explained that where garbage is readily accessible from the street or other public thoroughfares, an expectation of privacy may be objectively unreasonable because of the common practice of scavengers, snoops, and other members of the public in sorting through garbage. *Id.*

Because the garbage cans in this case were readily accessible and visible from a public thoroughfare, the alley, and because it is common for scavengers to snoop through garbage cans found in such alleys, we agree that Shanks could harbor no reasonable expectation of privacy since the garbage was essentially exposed to the public. Indeed, such a result is not only consistent with *Hedrick* but also with the even more analogous reasoning applied in *United States v. Dunkel*, 900 F.2d 105, 107 (7th Cir.1990). In *Dunkel*, this court upheld the constitutionality of the search of a dumpster located in the parking lot of a multi-tenant office building. We noted that the dumpster, although technically within the curtilage of the office, was nevertheless accessible to all persons. Therefore the defendant's expectation of privacy

was unreasonable since the contents in the dumpster were knowingly exposed to the public. *Id.* at 107–108.

Furthermore, Shanks cannot claim an expectation of privacy (that society would accept as objectively reasonable) merely because it was the police, rather than the regular garbage service, who rummaged through his garbage. Once he placed his contraband-containing bags in the garbage containers located adjacent to a public thoroughfare, he exposed them to the public-at-large, including the police. *See Greenwood,* 486 U.S. at 39–40, 108 S.Ct. at 1628–29. We also reject Shanks' claim that the findings below were clearly erroneous because the incriminating evidence was located in sealed, opaque bags. Indeed, the incriminating evidence was also hidden in opaque bags inside the garbage containers in *Greenwood,* and this fact did not change the Court's decision to uphold the search. *Id.* Moreover, the mere fact that an individual has taken measures to restrict some views of his activities does not preclude a police officer's observations from public vantage points where he has a right to be and which renders activities clearly visible. *See California v. Ciraolo,*

476 U.S. 207, 215, 106 S.Ct. 1809, 1814, 90 L.Ed.2d 210 (1986) (upholding warrantless aerial observation of marijuana in a fenced-in backyard within curtilage of home). Hence, in these circumstances, Shanks' attempt to conceal the contents in the opaque bags is without significance. Again, once Shanks put the contraband-containing bags in the garbage containers located next to (or in) a public thorough-fare readily accessible to the public, he could not hold a reasonable expectation of privacy in their contents. Accordingly, Shanks has failed to show that the findings below are clearly erroneous.

97 F.3d at 979–80.

In sum, from all reasonable appearances, the garbage bags placed upon the trailer were left there for the purpose of being collected as trash. Long did not enjoy a reasonable expectation of privacy in those bags, opaque or not. Because he did not enjoy a reasonable expectation of privacy in the trash taken by the officers, Long's motion to suppress necessarily fails.

IT IS THEREFORE ORDERED that Long's "Motion to Suppress" (Dk.20) is denied.