955 F.2d 586
 UNITED STATES of America, Appellee,
v.
Warren Earl COMEAUX, a/k/a Warren Como, Appellant.
UNITED STATES of America, Appellee,
v.
Carolyn Laverne BELL, Appellant.
UNITED STATES of America, Appellee,
v.
Larry ROBERSON, Appellant.
UNITED STATES of America, Appellee,
v.
Lillian WILSON, Appellant.
UNITED STATES of America, Appellee,
v.
Billy Ralph COOPER, Appellant.
 Nos. 90-5188, 90-5199, 90-5240, 90-5241 and 90-5403.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1991.
Decided Jan. 31, 1992.
Rehearing Denied March 9, 1992 in No. 90-5188.
 
 Douglas Peine, St. Paul, Minn., argued, for Comeaux and Bell.
 Herbert Abrams, Skokie, Ill., argued, for Roberson.
 Philip Resnick, Minneapolis, Minn., argued, for Wilson.
 John Wylde, Minneapolis, Minn., argued, for Cooper.
 Douglas Peterson, Asst. U.S. Atty., Minneapolis, Minn., argued, for appellee.
 Before LAY,* Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Larry Roberson, Billy Ralph Cooper, Carolyn Laverne Bell, Warren Earl Comeaux and Lillian Wilson appeal from judgments entered in the district court[1] upon jury verdicts finding them guilty of various drug-related charges arising from a conspiracy to possess with the intent to distribute heroin and cocaine. We affirm.
 
 
 2
 On March 6, 1989, Deputy Sheriff John Cich began to monitor the garbage cans behind 5512 33rd Avenue in Minneapolis, Minnesota. On March 13 Cich parked his van in the alley. While remaining in the van, Cich was able to reach out and pull in a plastic garbage bag which was on top of a garbage can located next to the garage. In the bag Cich found a kilogram cocaine wrapper, three bottles of a cutting agent, and traces of cocaine. Cich then applied for a warrant to search the house. On executing the warrant, officers found Bell inside. They also discovered six kilograms of high-purity cocaine, over 100 grams of heroin, drug paraphernalia, four weapons, ammunition, over $150,000.00 in cash, and drug ledgers, plane tickets and photos variously indicating appellants' involvement with the drugs. In addition, officers found an automobile in the garage with an identification card indicating Wilson was the owner of the car.
 
 
 3
 After waiving her Miranda[2] rights, Bell admitted that she and Roberson lived at the address and that Roberson used heroin and sold cocaine. Bell denied that she sold drugs, but admitted that her "job" was to count and hide the money and maintain the ledgers.
 
 
 4
 About two hours into the search, Comeaux and Roberson arrived at the house and were arrested. After waiving his Miranda rights, Roberson stated that "everything" in the house belonged to him. Later that evening, Cooper arrived and was arrested.
 
 
 5
 Pursuant to warrants, police searched Comeaux's and Cooper's homes. In Comeaux's home, officers found 8.26 grams of cocaine, $728.00 in cash, drug notes, a mobile phone, ammunition, photos, and receipts for expensive furniture; in Cooper's home they found a shotgun, ammunition, a bullet-proof vest, a holster, and a briefcase containing identification and a drug note.
 
 
 6
 Based on the seizures, which included photos showing Wilson counting money and cutting cocaine, on May 8, 1989 Internal Revenue Service (IRS) agent Henry Brummer applied for and obtained a warrant to search Wilson's home in Chicago. Wilson, who was 58 and asthmatic, was in the hospital at the time of the search, but several young women were inside. In a locked bedroom, officers found documents belonging to Wilson, 41 grams of cocaine, .988 grams of heroin, drug paraphernalia, approximately $16,000.00 in cash, and drug notes and ledgers showing transactions with Roberson, Bell, Wilson, Cooper and Comeaux. Other evidence introduced at trial indicated Wilson had laundered approximately $200,000.00 of the drug money by playing the slot machines in Las Vegas.
 
 
 7
 On appeal Roberson and Wilson challenge the district court's denial of their motions to suppress evidence. Roberson argues that the court erred in denying his motion to suppress evidence seized from 5512 33rd Avenue, claiming that the warrant was impermissibly based on Cich's unlawful search of the garbage cans. The district court held that the garbage search was permissible because "[t]he residents of the house ... voluntarily left trash for collection in an area particularly suited for public inspection." The court relied on California v. Greenwood, 486 U.S. 35, 37, 108 S.Ct. 1625, 1627, 100 L.Ed.2d 30 (1988), wherein the Supreme Court held that the fourth amendment did not prohibit the "warrantless search and seizure of garbage left for collection outside the curtilage of a home." Roberson asserts that Greenwood is distinguishable, because at the suppression hearing Cich testified that he was unsure whether the garbage cans were outside the curtilage. Roberson, however, has failed to provide a transcript of the suppression hearing. Ordinarily, in such circumstance, we would be unable to review his claim. However, even assuming that the garbage cans were within the curtilage, we find Roberson's claim to be without merit. We believe that the "proper focus under Greenwood is whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable." United States v. Hedrick, 922 F.2d 396, 400 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 147, 116 L.Ed.2d 113 (1991). In Hedrick, the court upheld a warrantless search of garbage that was placed in cans located within the curtilage of a home, because the cans were readily accessible to the public. Likewise, in this case, the garbage was readily accessible to the public. Testimony at Wilson's suppression hearing and the trial demonstrates that Cich did not even have to leave his van, which was parked in the alley, to retrieve the garbage.
 
 
 8
 Wilson challenges the search of her Chicago residence on several grounds. She first argues that suppression is required because there were material misrepresentations and omissions in the search warrant application. Although there were misstatements and omissions, the district court did not err in denying Wilson's motion to suppress because neither the misstatements nor omissions were material to the finding of probable cause. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). For example, the government concedes that Brummer erred when he stated that a plane ticket linking Wilson to the conspiracy was found in the automobile in the garage of the Minneapolis home. That misstatement, however, was not material to the finding of probable cause in that the ticket was found inside the home. Nor do we believe that Brummer's failure to mention that Wilson had won $200,000.00 in Las Vegas was material. As the district court noted, the fact Wilson had gambling winnings would have provided further support for her involvement in the drug conspiracy. At the Franks hearing Brummer testified that drug money is often "laundered" by gambling proceeds. Wilson also argues that the application for the warrant was stale because Brummer did not apply for the warrant until two months after the Minneapolis search. We agree with the government that given the scope of the conspiracy, the application was not stale. See United States v. Jones, 801 F.2d 304, 314 (8th Cir.1986) (seven-month delay between "the transaction and the warrant is not significant due to the protracted nature of this drug case"). Also without merit are Wilson's arguments concerning a lack of a nexus between her home and drug activity at the Minneapolis address, lack of specificity in the description of the items to be seized, and lack of IRS approval.
 
 
 9
 Roberson, Bell and Wilson argue that the court erred in denying their motions to sever and in permitting testimony concerning redacted portions of Bell's post-arrest statement to be admitted into evidence. At trial officers Cich and Jeffrey Burchette testified that after Bell's arrest she stated that she had lived at the Minneapolis house, that cocaine was processed, but that she did not sell cocaine. They testified that Bell stated her "job" was to count and hide the money within the house. Burchette testified that Bell had described a kilogram of cocaine as a ten to twelve inch square. Burchette also testified that after he advised Roberson of his Miranda warnings and that cocaine and weapons had been found in the house, Roberson responded that "everything" in the house belonged to him.
 
 
 10
 None of the appellants testified at trial. Bell's defense was that she moved to Minneapolis to marry Roberson and had no criminal intent to join the conspiracy, but found herself "counting some money and writing some things down for the man" with whom she had fallen in love. Roberson's defense was that he had moved to Minneapolis to attempt a reconciliation with Bell, who was living with Cooper at 5512 33rd Avenue. Roberson argued that he did not live at that address. Wilson's defense was that Roberson and Bell had used her name to purchase the automobile and airline tickets.
 
 
 11
 In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of a codefendant's post-arrest confession violated a defendant's sixth amendment right to confront witnesses against him. However, " 'the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession ... when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.' " United States v. Donahue, 948 F.2d 438, 443 (8th Cir.1991) (quoting Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)).
 
 
 12
 Roberson argues that even though Bell's statement was redacted to eliminate any express references to him, Bruton was violated because the clear implication of the statement was that he was involved in the conspiracy. See United States v. Long, 900 F.2d 1270, 1280 (8th Cir.1990). Furthermore, Roberson notes that in cross-examination Bell's counsel compounded the problem by referring to Roberson. The government responds that Roberson failed to timely object and has therefore failed to preserve the issue for appeal. We need not decide whether there was a Bruton violation or whether Roberson timely objected. Even assuming a violation and timely objection, on the facts of this case we find any error harmless. See id. Here, evidence other than the redacted statement amply demonstrated Roberson's involvement in the conspiracy. In addition to overwhelming physical evidence connecting Roberson to the conspiracy, he admitted "everything" in the house belonged to him. Roberson asserts that we should give little weight to his post-arrest admission because he was in a "drug-induced state" at the time he made it. However, it was for the jury, which was aware of Roberson's addiction to drugs, to determine the evidentiary value of the statement.
 
 
 13
 Bell asserts that the admission of her redacted statement violated the rule of completeness, which "holds that when a confession is introduced, the defendant has a right to have all, not just part of it, put into evidence." Id. at 1278-79. However, severance is required " 'only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.' " Id. at 1279 (quoting United States v. Kaminiski, 692 F.2d 505, 522 (8th Cir.1982)). Here, Bell argues she was precluded from proving that the guns and the drugs were controlled by Roberson and that her description of a kilogram of cocaine distorted her role in the offense. The government responds that any error was invited in that the government introduced the statement on redirect to correct a misimpression created by Bell's counsel and that Bell has failed to preserve the issue for appeal by failing to timely object. In any event, we find any error was harmless in light of Roberson's admission that "everything" in the house belonged to him. Moreover, there is overwhelming evidence of Bell's role in the conspiracy.
 
 
 14
 Wilson also appears to argue a violation of the rule of completeness by suggesting she was precluded from proving that Bell had not implicated Wilson in her statement. We do not believe that Wilson had any right to introduce Bell's statement. See Long, 900 F.2d at 1278-79; United States v. Udey, 748 F.2d 1231 (8th Cir.1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). In any event, in light of the overwhelming evidence of Wilson's guilt, we find any error harmless.[3]
 
 
 15
 Roberson, Bell, Wilson, Cooper and Comeaux all argue that the court erred in giving a vicarious liability instruction under Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). "Under Pinkerton, a party to a continuing conspiracy may be responsible for substantive offenses in furtherance of the conspiracy even though that party does not participate or know of the substantive offenses." United States v. Cerone, 830 F.2d 938, 944 n. 4 (8th Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). Appellants allege that the Pinkerton charge was erroneous because they were indicted as aiders and abettors on two counts of possession with the intent to distribute drugs, 21 U.S.C. § 841 and 18 U.S.C. § 2, and one count of use of a firearm in connection with a drug trafficking offense, 18 U.S.C. §§ 924(c) and 2, and further assert there was insufficient evidence of their knowing participation to support the aiding and abetting convictions. This court has already rejected appellants' argument. In Cerone, this court agreed with other circuits in holding that even in the absence of evidence supporting an aiding and abetting conviction, "persons indicted as aiders and abettors may be convicted pursuant to a Pinkerton instruction." Id. (citing United States v. Meester, 762 F.2d 867, 878 (11th Cir.), cert. denied, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985); United States v. Redwine, 715 F.2d 315, 322 (7th Cir.1983), cert. denied, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984)).
 
 
 16
 Moreover, we note that in United States v. Golter, 880 F.2d 91 (8th Cir.1989), this court approved the extension of Pinkerton to a § 924(c) firearms conviction. Here, as in Golter, based on the evidence demonstrating that Wilson, Comeaux and Cooper were experienced drug dealers and "the well recognized nexus between drugs and firearms, the jury was entitled to infer that [they] must have been aware of the likelihood or possibility" that Roberson and Bell would possess firearms in furtherance of the conspiracy.[4] Id. at 94 (citations omitted). We also note that the Sixth Circuit has recently held that a defendant may be held liable under Pinkerton for aiding and abetting a codefendant's use of a firearm in violation of § 924(c). United States v. Christian, 942 F.2d 363, 367-68 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992).
 
 
 17
 We have reviewed appellants' other allegations of trial error and find them to be without merit.
 
 
 18
 Wilson is the only appellant who challenges her sentence. Pursuant to the Sentencing Guidelines, the district court sentenced Wilson to 240 months imprisonment for the conspiracy and possession convictions and 60 months for the weapons conviction. Wilson first argues that the district court erred in enhancing her sentence for her role in the offense under § 3B1.1(a). We find that the district court was not clearly erroneous in finding that the trial testimony established Wilson's leadership role in the conspiracy. See United States v. Wiegers, 919 F.2d 76, 77 (8th Cir.1990) (§ 3B1.1(a) enhancement warranted where defendant acted as connection between two cities in drug conspiracy). Nor do we find that the district court was clearly erroneous in refusing to grant a two-point reduction for acceptance of responsibility. As the court noted, Wilson did not accept responsibility, but only admitted past drug use. See United States v. Laird, 948 F.2d 444, 446-47 (8th Cir.1991). Last, we are not "empowered ... to review [the] sentencing court's exercise of its discretion to refrain from departing either upward or downward from the range established by the applicable guideline.' " Id. at 447 (quoting United States v. Evidente, 894 F.2d 1000, 1004 (8th Cir.), cert. denied, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990)). We note, however, that contrary to Wilson's assertion, the court did consider her age and health in refusing to depart downward. Compare United States v. Ruklick, 919 F.2d 95, 97 (8th Cir.1990) (remand appropriate "where the district court misunderstood its authority to grant a downward departure").
 
 
 19
 Accordingly, the judgments are affirmed.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota
 
 
 [2]
 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)
 
 
 [3]
 Because Roberson, Bell and Wilson have failed to demonstrate prejudice, we also reject their related claim that the district court erred in denying their motions to sever because of antagonistic defenses
 
 
 [4]
 We further note that the officers found a shotgun, which was not the subject of a § 924(c) charge, ammunition and a holster at Cooper's home and ammunition at Comeaux's home