COMMONWEALTH *vs.* KRISCO CORP.
(and eleven companion cases[1]).

Middlesex. April 3, 1995. - August 2, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Search and Seizure*, Expectation of privacy, Dumpster, Commercial prem-
ises, Consent, Exigent circumstances. *Constitutional Law*, Search and
seizure. *Hazardous Waste*.

Discussion of the law of search and seizure relating to the concept of rea-
sonable expectation of privacy as applicable to trash, garbage, and
dumpsters on residential or commercial premises. [41-45]
Defendants in a criminal case, charged with improper disposal of hazard-
ous waste, demonstrated a constitutionally protected reasonable expec-
tation of privacy in the contents of a dumpster, which was in a fenced
and locked alley next to the defendants' commercial premises and
which was not accessible nor were the contents visible to the public.
[45]
The finding of a judge, hearing a motion to suppress evidence seized in a
warrantless search, that the consent to the search given by the defend-
ant was no more than acquiescence to a claim of lawful authority, was
not clearly erroneous and was warranted by the evidence [45-46];
moreover, the judge correctly concluded that there were no exigent cir-
cumstances to justify the warrantless search [46-48]: the items seized
were correctly suppressed.

INDICTMENTS found and returned in the Superior Court
Department on August 11, 1993.

A pretrial motion to suppress evidence was heard by
*Gordon L. Doerfer*, J.

An application for leave to prosecute an interlocutory ap-
peal was allowed by *Lynch*, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by
him to the Appeals Court. The Supreme Judicial Court on

[1]Six against Kristopher Ogonowsky and five against Krisco Corp.

its own initiative transferred the case from the Appeals Court.

*Martin E. Levin,* Assistant Attorney General, for the Commonwealth.

*Morris M. Goldings* (*Amy J. Axelrod* with him) for the defendants.

LIACOS, C.J. The defendants, Krisco Corp. and Kristopher Ogonowsky, each were indicted by a Middlesex County grand jury on four counts of violating G. L. c. 21C, § 5 (1994 ed.), which prohibits, inter alia, the transfer of hazardous waste to an unlicensed individual. Each defendant was also indicted on two counts of attempting an illegal transfer of hazardous waste in violation of the statute. The defendants filed a motion to suppress evidence seized from a dumpster on the defendants' commercial premises. After an evidentiary hearing, a judge in the Superior Court granted the defendants' motion. A single justice of this court allowed the Commonwealth's application for interlocutory appeal. We affirm the allowance of the motion to suppress.

We recite the facts found by the motion judge. The defendants operated an auto body repair and paint shop in Somerville under the name MAACO. The business came to the attention of the Department of Environmental Protection (department) when it received an anonymous telephone call from a "disgruntled former employee" regarding the improper disposal of hazardous paint materials at the shop. The former employee stated that he had been paid regularly while under the defendants' employ not to reveal the illegal disposal method. He described how the defendants disposed of the paint by placing one-gallon cans in the shop's dumpster shortly before pick up by a waste hauler. The former employee also stated that the truck driver was paid to haul the paint away and to remain silent about the illegal scheme.

Based on this information, David Spector, an inspector from the "Environmental Strike Force" (comprised of members of the department, the Attorney General's office, and the State police) began a surveillance of the dumpster from the upper story of a neighboring building. The dumpster was

located in an alley that was kept closed most of the time except during the emptying of the dumpster. From his surveillance point, Spector could see the alley and the surface of the inside of the dumpster. Spector conducted surveillance of the dumpster over a period of weeks.

The contents of the dumpster were not visible to passersby in the alley. However, it was possible to climb into the dumpster and look through its contents. Occasionally, objects were thrown into the dumpster by unknown persons. The dumpster was emptied weekly into a truck which compacted the material immediately. A private company, Waste Management Company, was under contract with the defendant corporation to pick up the contents of the dumpster and haul it away.[2] There was no evidence regarding the ultimate destination of the garbage.

The dumpster was emptied every Thursday between July 23, 1992, and October 8, 1992. On twelve dates Spector made observations of the dumpster and, on many of these dates, saw paint cans thrown into the dumpster by people on the premises, shortly before pick up. He also observed the defendant Ogonowsky pass what he believed to be money to a waste disposal company employee when the dumpster was emptied. He recorded these observations with a video camera. The observations were consistent with the information received from the disgruntled former employee.

---

[2]The relevant findings of the judge were stated as follows:

"The contents of the dumpter could not be seen by casual passers by. Some effort and risk would be involved for someone to climb into the dumpster and rummage around, and there was only a limited window of opportunity for such rummaging. It was reasonable to expect that it was unlikely to occur in any given short period of time. Although activity around the dumpster could be seen from elevated positions it was reasonable to expect that particular items of trash could not be identified from such a vantage point.

"The dumpster was technically for the sole use of the defendants, not the general public. It was a piece of personal property which was not itself slated for disposal, but for re-use. The dumpster was not abandoned in any sense, as a trash bag is. Although it was not locked, the defendant had a right to secure it until it was emptied."

Spector conferred with Nancy Thornton, an environmental engineer attached to the strike force, and showed her the videotape of his surveillance. Thornton knew that the kind of paint used in auto body shops contained ingredients which make paint a hazardous material requiring special disposal and that both placement of the material into the dumpster and its subsequent disposal by Waste Management would be unlawful. The judge concluded that, based on this information, Thornton had probable cause to believe that the defendants were engaged in a regular and knowing illegal scheme to dispose of paint by prearrangement with the operator of the disposal truck to put the paint cans in the dumpster shortly before pick up so as to avoid detection.

By mid-September, Thornton made a decision to conduct an administrative inspection as a way to gain entrance to the premises and to seize paint cans from the dumpster for use as evidence in a later enforcement proceeding. Thornton planned to wait until Spector observed cans being thrown into the dumpster and then enter the premises and search the dumpster before the arrival of the Waste Management truck.

On October 8, 1992, Spector observed an employee dispose of from five to eight cans in the dumpster and passed the information to Thorton by walkie-talkie. In the company of another member of the strike force, Thornton entered the MAACO shop through the front door and told Ogonowsky that she was an inspector from the department and was there to do a "multimedia" inspection. Ogonowsky asked her what that was and she told him that it was an inspection for air pollution, water pollution, solid waste, hazardous waste, drains, and industrial waste. Ogonowsky told her that the Massachusetts Water Resources Authority had been there previously to inspect the drains. She said she would still like to do an inspection. He asked her to do it quickly because he was busy.

While Thornton's colleague inspected the shop's records, Thornton examined the shop and then moved to the dumpster. Ogonowsky was friendly and cordial and asked Thorton

whether she was going to climb into the dumpster. When she said yes, he remarked he was glad he did not have her job.

Thornton retrieved paint cans from the dumpster and informed Ogonowsky that they were hazardous waste which could not lawfully be disposed of in the dumpster. Ogonowsky said the cans must have been placed there by accident.

The judge held that the warrantless search of the shop and the dumpster could not be justified as an administrative search,[3] under a theory of consent to search, or as a search based on exigent circumstances. The judge also disagreed with the Commonwealth's contention that the defendants lacked a reasonable expectation of privacy in the dumpster which would preclude protection under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution.

1. *Expectation of privacy.* The Fourth Amendment and art. 14 protect from unreasonable search and seizure those areas in which individuals have a subjective expectation of privacy that is objectively "reasonable," "justified," or "legitimate." *California* v. *Greenwood,* 486 U.S. 35, 39 (1988). See *Commonwealth* v. *Welch,* 420 Mass. 646, 653 (1995); *Commonwealth* v. *A Juvenile (No. 2),* 411 Mass. 157, 160-161 (1991); *Commonwealth* v. *Cote,* 407 Mass. 827, 833 (1990), quoting *Commonwealth* v. *Blood,* 400 Mass. 61, 68 (1987); *Commonwealth* v. *Pratt,* 407 Mass. 647, 660-661 (1990); *Commonwealth* v. *Panetti,* 406 Mass. 230, 231-232 (1989). Thus, the first step in analyzing a search or seizure by government agents is whether the individual against whom the fruit of the search or seizure is used as evidence (1) had a subjective expectation of privacy in the place

---

[3]On this appeal, the Commonwealth does not argue that the judge erred in concluding that the search of the defendants' premises and the dumpster was not a valid administrative search. The judge found that the search "was not a valid administrative search, but rather was a criminal investigative search using G. L. c. 216, § 8, as a subterfuge to avoid the burden of obtaining a warrant." See *Commonwealth* v. *Bizarria,* 31 Mass. App. Ct. 370, 377-378 (1991). See also *Commonwealth* v. *Tart,* 408 Mass. 249, 256 (1990); *Commonwealth* v. *Frodyma,* 386 Mass. 434, 437-438, 443-445 (1982).

searched or the item seized that (2) society would accept as reasonable. *California* v. *Greenwood, supra* at 39. *Katz* v. *United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

Usually, the second part of the test, i.e., whether the asserted expectation of privacy was objectively reasonable, is the most disputed. This element is highly dependent on the particular facts involved and is determined by examining the circumstances of the case in light of several factors. *Commonwealth* v. *One 1985 Ford Thunderbird Auto.*, 416 Mass. 603, 607 (1993). These factors include the nature of the intrusion, whether the government agents had a lawful right to be where they were, and the character of the location searched. See *Commonwealth* v. *Welch, supra* at 653-654; *Commonwealth* v. *One 1985 Ford Thunderbird Auto., supra.* An examination of the character of the location should include a determination whether the defendants owned the place or controlled access to it as well as whether the place was freely accessible to others. *Commonwealth* v. *Welch, supra. Commonwealth* v. *Panetti, supra* at 232. We also consider whether the defendant took normal precautions to protect his privacy. *Commonwealth* v. *Pina*, 406 Mass. 540, 545, cert. denied, 498 U.S. 832 (1990). *Commonwealth* v *D'Onofrio*, 396 Mass. 711, 716-717 (1986). *Commonwealth* v. *Simmons*, 392 Mass. 45, 50, cert. denied, 469 U.S. 861 (1984).

In cases involving the reasonableness of an expectation of privacy in trash and garbage, courts have focused on the degree to which the garbage at issue was exposed, or accessible, to the public. *California* v. *Greenwood, supra* at 40-41. *United States* v. *Comeaux*, 955 F.2d 586, 589 (8th Cir.), cert. denied, 506 U.S. 845, and cert. denied sub nom. *Roberson* v. *United States*, 506 U.S. 944 (1992). *United States* v. *Hedrick*, 922 F.2d 396, 400 (7th Cir.), cert. denied, 502 U.S. 847 (1991). *United States* v. *Dunkel*, 900 F.2d 105, 107 (7th Cir. 1990), vacated on other grounds, 498 U.S. 1043 (1991). *Commonwealth* v. *Pratt, supra* at 660-661. *Commonwealth* v. *Chappee*, 397 Mass. 508, 512-513 (1986). It is well estab-

lished that, in general, government agents may make a warrantless search of areas in which the public has free access, including areas in which trash or garbage is discarded. *United States* v. *Hall,* 47 F.3d 1091, 1095 (11th Cir.), cert. denied, 116 S. Ct. 71 (1995). See *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 742 (1981) ("an individual can have only a very limited expectation of privacy with respect to an area used routinely by others").

In regard to the privacy interest in garbage, most cases have involved searches of garbage found on or near residential property. The leading case, *California* v. *Greenwood, supra,* established that trash left bagged and on the curb outside the curtilage of a home is not protected by the Fourth Amendment because it is left in a place "particularly suited for public inspection" and for the purpose of transferring possession to a third person, the garbage collector, who would then be free to search the garbage or allow others to search it. *Id.* at 40-41. Federal courts have applied *Greenwood*'s reasoning in a variety of factual settings involving residences, and have consistently focused on the degree to which the garbage was accessible to the public. See, e.g., *United States* v. *Scott,* 975 F.2d 927, 929 (1st Cir. 1992), cert. denied, 507 U.S. 1042 (1993) (no reasonable expectation of privacy in shredded documents in trash bag on curb outside residence); *United States* v. *Comeaux, supra* (no reasonable expectation in trash bag left in alley behind home even if within curtilage because trash exposed to public); *United States* v. *Hedrick, supra* (no reasonable expectation of privacy in trash bags left in barrels within curtilage of home where barrels were fully visible and accessible to public); *United States* v. *Certain Real Property Located at 987 Fisher Rd.,* 719 F. Supp. 1396, 1404 (E.D. Mich. 1989) (reasonable expectation of privacy in trash bags placed against outside wall of house within curtilage and not visible from street). See also *United States* v. *Michaels,* 726 F.2d 1307, 1312-1313 (8th Cir.), cert. denied, 469 U.S. 820 (1984) (pre-*Greenwood* case holding no reasonable expecta-

tion of privacy in trash deposited in communal trash bin of apartment complex).

Our court has addressed the constitutional implications of such searches on two occasions, both involving residential property. In these cases we followed the reasoning of the Federal cases. See *Commonwealth* v. *Pratt, supra* (no reasonable expectation of privacy under art. 14 or Fourth Amendment in trash bags left curbside for collection); *Commonwealth* v. *Chappee, supra* at 512 (similar facts decided on basis of Fourth Amendment only).

The degree of public access is usually much greater in commercial locations than in residential locations. Historically, courts have held that an individual's expectation of privacy in commercial premises is somewhat less than in a residence. *United States* v. *Hall, supra* at 1095. Thus, although the test whether the expectation of privacy is reasonable is the same for both the residential and commercial spheres, the factors employed in the analysis are not necessarily accorded the same weight when commercial property is involved. *Id.* Unlike activities or objects in the home, which need only be removed from plain view to be protected, one seeking to protect his or her privacy in a commercial location must take affirmative steps to bar the public from the area they wish to keep private. *Id.* See *Katz* v. *United States, supra* at 351-352 (what an individual "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected"); *United States* v. *Swart*, 679 F.2d 698, 701 (7th Cir. 1982) (defendant had reasonable expectation of privacy in area of business premises not open to public).

Federal courts have, on a few occasions, considered the reasonableness of the expectation of privacy in dumpsters on commercial property. In these cases, as in cases involving residential property, the courts have generally considered the public's accessibility to the dumpster the most important factor as to whether an expectation of privacy in the dumpster was reasonable. They have also considered whether any actions were taken to exclude the public from the dumpster.

The United States Court of Appeals for the Seventh Circuit has held that the owner of an office building had no reasonable expectation of privacy in a dumpster located in the parking lot of the building. *United States* v. *Dunkel, supra*. The court pointed out that seven tenants of the building used the dumpster and that the parking lot in which the dumpster was located was used by visitors to the building and was fully accessible to the public. *Id.* at 106-107. The location was not secured in any way so as to exclude the public. *Id.* More recently, the United States Court of Appeals for the Eleventh Circuit held that a defendant had no reasonable expectation of privacy in shredded documents found in a dumpster on the defendant's commercial property where the dumpster was located on a road which was not marked as private or barricaded in any way and was thus fully accessible to the public. *United States* v. *Hall, supra* at 1093, 1095.

The dumpster at issue in the instant case was located in an alley adjacent to the defendants' business and, although strangers occasionally managed to throw objects into the dumpster, it was intended for use exclusively by the MAACO shop. The contents of the dumpster were not visible to passersby and it was possible to gain access to its contents only by climbing into the dumpster. Unlike cases finding no reasonable expectation of privacy, Ogonowsky in the instant case took affirmative steps to protect his privacy interest in the dumpster. He installed gates at either end of the fenced alley and kept them closed until the waste hauler arrived. In these circumstances, the judge was warranted in concluding that the defendants demonstrated their subjective expectation of privacy in the contents of the dumpster, and that, further, this expectation was one which society would accept as reasonable. See *Commonwealth* v. *Chappee, supra* at 512.

Because the defendants enjoyed an expectation of privacy in the dumpster which was constitutionally protected, the strike force agent who conducted the search of the dumpster was required to obtain a search warrant prior to conducting the search. She did not. The record discloses no reason for

this failure in light of the existence of ample probable cause. Warrantless searches are presumptively unreasonable and therefore illegal absent a showing by the Commonwealth of the existence of one of the recognized exceptions to the warrant requirement. Here, the Commonwealth relies on the theory of consent, and, in the alternative, the existence of exigent circumstances which it alleges made the obtaining of a warrant impracticable.

2. *Consent.* "When a prosecutor relies upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper* v. *North Carolina,* 391 U.S. 543, 548-549 (1968). See *Commonwealth* v. *Buchanan,* 384 Mass. 103, 106-107 (1981). Consent is made freely and voluntarily when it is given "unfettered by coercion, express or implied." *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978), quoting *Commonwealth* v. *Walker,* 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976).

The judge concluded that the consent given by Ogonowsky in the instant case was "nothing more than acquiescence to a show of lawful authority." "Voluntariness of consent 'is a question of fact to be determined in the circumstances of each case.'" *Commonwealth* v. *Harmond, supra,* quoting *Commonwealth* v. *Aguiar,* 370 Mass. 490, 496 (1976). This finding was not clearly erroneous and was warranted by the evidence. See *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 177 (1980); *Commonwealth* v. *Bizarria,* 31 Mass. App. Ct. 370, 378 (1991). Thornton declared that she was from the Department of Environmental Protection and was on the premises for the purpose of making an administrative inspection. Ogonowsky was not informed that he could demand she obtain a warrant. Although this fact is not determinative of the issue, it is relevant with regard to the voluntariness of the consent. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248-249 (1973). *Commonwealth* v. *Cantalupo, supra* at 178. *Commonwealth* v. *Buchanan, supra* at 107.

3. *Exigent circumstances.* The Commonwealth argues that its agents did not have probable cause to search the dumpster until the paint cans were placed in it on October 8, the day of the search, and that they had insufficient time to obtain a warrant to search the dumpster between the time the paint cans were placed in the dumpster and the arrival of the Waste Management truck. Thus, the Commonwealth argues, once probable cause was established, the circumstances became exigent and a warrant was not required.

We agree with the judge that Spector and Thornton had established probable cause to believe that paint cans would be placed in the dumpster on October 8, a Thursday, long before that date arrived. Spector had begun surveillance of the dumpster weeks before and had observed paint cans being placed in the dumpster on nearly every Thursday at the same time of day. The warrant could have been executed within seven days after its issuance and thus could have been obtained even though the paint cans were not in the dumpster at the time of issuance. See G. L. c. 276, § 3A (1994 ed.). We conclude that no exigent circumstances existed which would relieve the Commonwealth of its responsibility in obtaining a search warrant. See *Commonwealth* v. *Forde*, 367 Mass. 798, 801-803 (1975) (warrantless search of apartment violated Fourth Amendment where police failed to obtain warrant even though they had surveilled apartment for some time and had probable cause for week prior to search). Any perceived exigency due to the short period of time between the placement of the paint cans in the dumpster and the arrival of the Waste Management truck was reasonably foreseeable and therefore cannot be relied on by the Commonwealth. *Id.* at 802-803. Those cases relied on by the Commonwealth, *Commonwealth* v. *Killackey*, 410 Mass. 371 (1991); *Commonwealth* v. *Cast*, 407 Mass. 891 (1990); *Commonwealth* v. *King*, 35 Mass. App. Ct. 221 (1993), are distinguishable from the instant case in that they all involve warrantless searches of automobiles. Exigency requirements are applied far less stringently with regard to automobiles

due to their inherent mobility. *Commonwealth* v. *Cast, supra* at 904.

The order of suppression is affirmed.

*So ordered.*