Agnes, A. J.
The defendant, Julio Padilla, is charged by indictment with trafficking in more than 28 grams of cocaine and with a school zone violation. He has filed a pretrial motion to suppress evidence.
FINDINGS OF FACT
Based on the credible evidence presented at the hearing on the defendant’s motion to suppress and the reasonable inferences that may be drawn from that evidence, I make the following findings of fact.
Captain Thomas Walsh held the rank of Lieutenant and was assigned to the North East Drug Task Force on March 17, 2000. On that day, he was asked by Sergeant Canty and trooper Blanchard to assist other officers in execution of a search warrant for 179 Springfield Street, Lawrence, Mass. Although the affidavit in support of this warrant is not in evidence before me, there was evidence that it contains information that several controlled buys of cocaine were made from the defendant at his apartment within 72 hours of the search. The sufficiency of the affidavit in support of the search warrant is not the issue before the court. Rather, this motion concerns the conduct of the police prior to and during the execution of the warrant.
An arrest warrant for the defendant was not sought, nor was the defendant charged with any violations arising out of these transactions. The police believed the defendant to be employed at the L&M Bakery on Union Street in Lawrence. Lt. Walsh and a Spanish-speaking police officer went to the bakery. The location is not a retail store, but rather a baking facility. The public does not have a right of access to the facility, and none of the events in question involving the defendant took place in public areas. Lt. Walsh identified himself, in English, as a police officer and asked the person to get the defendant. The person who answered the door went inside and returned with the defendant. A conversation between Lt. Walsh and the defendant took place inside the bakery facility. Lt. Walsh, again in English, identified himself as a police officer, and told the defendant he had a search warrant for the first floor apartment at 179 Springfield Street. The defendant, whose first language is not English but who speaks some English, replied in English that he did live there. The police escorted the defendant back to his locker, and while holding the defendant, searched his locker from which the defendant retrieved his keys and jacket. Once outside the bakery, the defendant was handcuffed, placed in a police cruiser and brought to 179 Springfield Street. At some point prior to arriving at his apartment, Miranda rights were read to the defendant in English. The police explained that they had a search warrant for his apartment, and, as a result, had the authority to use force to enter his apartment, which might include breaking, down the front door. The police added that the defendant could agree to accompany them to the *279 apartment and avoid the need for the police to use force.
There was some evidence that handcuffs were employed for the defendant’s own safety and that he was free to leave at any time but I do not credit such testimony. I conclude that the defendant was in the custody of the police as soon as they entered the bakery, and did not voluntarily accompany the police to his apartment.
Meanwhile, State Police trooper Mark Blanchard was conducting counter-surveillance áctivities outside the defendant’s apartment at 179 Springfield Street. When the defendant was brought to the apartment by Lt. Walsh, he was made aware of the warrant (but not shown or given a copy), and complied with the request by the police to hand over his keys which were used to gain entry into his apartment.
Once inside the apartment, the defendant was cooperative. The police removed the handcuffs. He responded to the questions asked by the police. In particular, he was asked to point out the location of drugs, and he did so. He showed the police where his bedroom was located, and the location of a “stash” inside the headboard of his bed where a quantity of cocaine and a digital scale were found. Drugs were found in other locations inside the apartment as well. The defendant was transported to the police station for booking. There, he was again advised of his Miranda rights.
DISCUSSION
Four issues are raised by the defendant’s motion to suppress: (1) was the defendant arrested or taken into custody at the bakery, (2) if-so, did the police act lawfully, (3) apart from whether the arrest was lawful, were the police required to administer and secure a valid waiver of the defendant’s Miranda rights before questioning him, and (3) if the statements made by the defendant to the police are suppressed as a result of an unlawful arrest, does the “inevitable discovery” doctrine apply and render the seizure of drugs inside his apartment lawful?
1. Was the defendant arrested at the bakery? The Commonwealth maintains that the defendant was not in police custody when he left the bakeiy, but rather that he voluntarily accompanied the police to his apartment, and that handcuffs were employed for his own safety. Based on the facts I have found, this argument is patently absurd. From the first moment of the encounter between the police and the defendant at the bakery, the police were in physical control of the defendant’s person. They led him by the arm to the locker area and once outside they placed in him handcuffs. In no sense was he free to leave. The police were not acting on the basis of reasonable suspicion in order to ascertain whether a crime had taken place because they clearly had probable cause to arrest the defendant on the basis of the earlier controlled buys. In these circumstances, the defendant was under arrest moments after he encountered the police inside the doorway to the bakery. See Commonwealth v. Borges, 385 Mass. 788, 791 (1985).
2. Did the police have an obligation to obtain an arrest warrant? Both the Fourth Amendment to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights regard the use of a judicially approved warrant as a necessary prerequisite to a lawful search or seizure subject only to a limited number of established exceptions. See, e.g., Commonwealth v. DiToro, 51 Mass.App.Ct. 191, 195 (2001). With respect to an arrest, in the absence of exigent circumstances or consent, the police may not make a warrantless entry into a person’s dwelling or the dwelling of a third person in order to effect the arrest of a suspect without an arrest warrant (in the case of the person’s own dwelling), or an arrest warrant and a search warrant (in the case of a person who is inside a third party’s dwelling). Commonwealth v. DeRosia, 402 Mass. 284, 285 (1988). This rule is based on the high regard the law has for an individual’s expectation of privacy in the home. See Commonwealth v. Forde, 367 Mass. 798 (1975). See also Kylo v. United States, 533 U.S. _ (2001).
The safeguards of the Fourth Amendment and Article 14 are applicable to business and commercial premises as well as to the setting of a home or an apartment. See United States v. Driver, 776 F2d. 807, 808 (5th Cir. 1985) (a warrantless arrest which took place in a warehouse that was separated from a customer service area of the commercial establishment was unlawful). See also Commonwealth v. Olivares, 30 Mass.App.Ct. 596, 597 (1991) (Court assumes that the defendant has a reasonable expectation of privacy in his private business premises such that a warrant is required before the police may conduct a search). A two-part inquiry must be undertaken in order to determine whether an individual has a legitimate expectation of privacy in the setting of a store or business such that the police must first obtain a warrant (or come within one of the recognized exceptions to the warrant requirement) before conducting a search or seizure. The inquiry requires the court to answer two questions: (1) does the individual have a subjective expectation of privacy in the particular location, and (2) if so, is it one that society regards as reasonable. Commonwealth v. Krisco Corp., 421 Mass. 37, 41 (1995).[1] The second question is usually the one that is in dispute. It requires the court to examine the character of the place where the search or seizure occurs, the extent to which the individual owns or has control over the property or premises, what precautions, if any, have been taken to preserve the individual’s privacy, and whether others routinely use the area in question. See Commonwealth v. Berry, 420 Mass. 95, 106 n. 9 (1995) (individual had no reasonable expectation of privacy in a package of cigarettes *280 left on a police counter for several hours). See also Commonwealth v. Welch, 420 Mass. 646, 653-54 (1995) (firefighter had a reasonable expectation of privacy in his locker, but not in a common area of the firehouse that was freely accessible to others).
Commercial establishments or business premises vary greatly in terms of the expectation of privacy that employees enjoy. An important consideration is the extent to which the public has a right of access to the premises.[2] In shopping malls located on private properly or retail businesses located outdoors in public areas such as public parks or plazas, there may be virtually unlimited public access to areas in which employees work (at least during business hours). Such locations may be the functional equivalent of a public place for purposes of determining whether a warrant is required for an arrest that is otherwise based on probable cause. In other types of commercial establishments or business premises, in which public access is prohibited or strictly limited, the expectation of privacy enjoyed by employees may come closer to that which a person enjoys in a home than to that which applies in public places. Also, a commercial establishment or a business premise may have a variety of settings within it such as rest rooms, employee lounges, locker rooms and dressing areas, private offices, open work areas etc., in which the expectation of privacy enjoyed by employees will be greater or lesser depending on the characteristics of each setting.
In the present case, there was no evidence offered about the particular features of the bakerythe nature of its operations and the arrangement of its interior spaceother than the fact that it was not an establishment that was open to the public, and that it included a locker area where employees stored personal belongings. Although it may be assumed that the bakery employed a number of people in a variety of capacities (we know of at least one other person who was on the premises other than the defendant), some or all of whom who may have had access to all of the areas in which the defendant worked and was authorized to use, as an employee of a business that was not open to the public and whose operations were hidden from public view, the defendant had a reasonable expectation of privacy in his workplace such that a warrant should have been obtained before the police made an entiy to effect his arrest.
One of the recognized exceptions to the warrant requirement is based on consent by an authorized person. There is no evidence the police asked permission to enter the business or that the person who admitted them had authority to do so. In fact, the person who answered the door and then went to look for the defendant is not identified. The police did not advise this person or the defendant of their right to refuse to allow the police to enter the premises. The burden of establishing that the police had consent to enter business premises that are not open to the public rests with the Commonwealth. Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976). In this case, from a consideration of the totality of the circumstances I find that the Commonwealth has not met its burden of proving valid consent. Commonwealth v. Cantalupo, 380 Mass. 173, 178 (1980).
The warrant that was obtained in this case was for the defendant’s dwelling and not for his place of business. With the previous undercover buys, the police probably had enough evidence to establish probable cause to arrest the defendant. However, a warrant was necessary in order to enter the defendant’s place of business in order to effect this arrest.[3]
3. Did the defendant make a valid waiver of his Miranda rights? Even if the defendant was not arrested at the bakery or even if there was an arrest that met constitutional standards even though no warrant had been obtained, the defendant was in police custody at the time he was questioned. In these circumstances, he was entitled to receive the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). The burden is on the Commonwealth to establish beyond a reasonable doubt that he freely and voluntarily waived his Miranda rights. See Commonwealth v. Day, 387 Mass. 915, 921 (1983). See also Commonwealth v. Gordon, 47 Mass.App.Ct. 825 (1999). This burden means that the Commonwealth is required to establish more than simply the fact that the police recited the familiar warnings. Rather, the Commonwealth must prove that the defendant comprehended the Miranda warnings and made a free and voluntary decision to relinquish his rights.
The defendant made the statements at issue in this case while in the physical custody of the police. They had hold of his arm while inside the bakery, and put him in handcuffs when he was brought outside. The police essentially gave the defendant a choice between cooperating by letting them into his apartment and pointing out where the drugs were secreted, or exercising his constitutional rights and watching the police break down the door to his apartment. A valid waiver of Miranda rights cannot be obtained by means of “excessive police pressure or unfair tactics . . .” Commonwealth v. Silva, 388 Mass. 495, 502 (1983). Under the totality of the circumstances, the Commonwealth has not met its burden of proving a voluntary waiver of Miranda rights. While I do not say that a person in the defendant’s position could not have made a voluntary decision to cooperate, I am not persuaded that the Commonwealth has established such a waiver beyond a reasonable doubt.
4. Whether the evidence seized at the defendant’s apartment is admissible under the inevitable discovery doctrine? The Commonwealth argues that even if the arrest was illegal or statements were obtained without Miranda warnings, the “inevitable discovery” doctrine should apply and render the seizure of drugs inside the apartment lawful. In order for the inevitable discovery doctrine to apply two things must be considered: (1) the inevitability of the finding and (2) the character of the police misconduct. Commonwealth v. O'Connor, 406 *281 Mass. 112, 117 (1989). The Commonwealth has the burden of proving the facts bearing on the inevitability beyond a preponderance of the evidence. Id.
For the reasons noted above, the defendant’s statements that led the police to the drugs were incident to an unlawful arrest or the product of a violation of Miranda, or both, and must be suppressed. However, when looked at in light of the fact that the police had a search warrant, the inevitability of the finding of the drugs seems to be high and the character of the police misconduct appears to be minimal. This is contrary to the facts and circumstances in Commonwealth v. Benoit, 382 Mass 210, 218-19 (1981). In Benoit the Supreme Judicial Court refused to accept the argument that the inevitable discovery doctrine should apply and render the evidence seized admissible because a search warrant would eventually have been secured. Id.
[W]e decline to apply the rule in a situation where its effect would be to read out of the Constitution the requirement that the police follow certain protective proceduresin this case, the warrant requirement of the Fourth Amendment. We can find no authority for applying the “inevitable discovery" rule to cure an illegal warrantless search on the basis that it was inevitable that a warrant would be obtained. To do so, according to the court, would be to eviscerate the warrant requirement.
Id. at 218-19 (citations omitted).
The Supreme Judicial Court has suggested that in appropriate circumstances it will apply the inevitable discovery doctrine. See Commonwealth v. Sbordone, 424 Mass. 802, 810 (1997) (“Under the inevitable discovery doctrine, if the Commonwealth can demonstrate by a preponderance standard that discovery of the evidence by lawful means was certain as a practical matter, the evidence may be admissible as long as the officers did not act in bad faith to accelerate the discovery of evidence, and the particular constitutional violation is not so severe as to require suppression”). For example, in Commonwealth v. Perrot, 407 Mass. 539, 546-47 (1990), the Supreme Judicial Court observed that,
In Commonwealth v. O’Connor, 406 Mass. 112 (1989), we adopted an inevitable discovery rule which complied with art. 14 of the Massachusetts Declaration of Rights. We indicated that application of the rule requires a two-step analysis which focuses, first, on the question of inevitability, and, second,, on the character of the police misconduct. As to the first consideration, we indicated that the Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence and, once the relevant facts have been proved, that discoveiy by lawful means was “certain as a practical matter." Id. As to the second consideration, we stated that “the severity of the constitutional violation is critical in deciding whether to admit evidence that it is shown would inevitably have been discovered.” Id. at 118. For example, we stated that evidence seized in violation of a search warrant requirement would not be admitted even if its subsequent lawful discovery was inevitable. Id. We also stated that the “(b]ad faith of the police . . . will be relevant in assessing the severity of any constitutional violation.”
In the present case, the violation of the law which preceded the search did not involve bad faith or an intentional or reckless disregard of the defendant’s rights. The police secured a purported waiver of the defendant’s Miranda rights by means of an inducement that rendered the waiver less than voluntary, at least by a standard of proof beyond a reasonable doubt. Although it is true that the search warrant authorized the use of reasonable force to gain entry to the defendant’s apartment, the impression was given that absent his cooperation, the front door to the apartment would be destroyed. Nonetheless, the police obtained a search warrant. See also Commonwealth v. Somers, 44 Mass.App.Ct. 920, 923 (1998) (inevitable discovery doctrine applicable to seizure of a gun found in defendant’s car pursuant to standard inventory search of impounded car). Therefore, based on the existence of a valid warrant for the search of the defendant’s apartment, the practical effect of which is to make it inevitable that the evidence would have been discovered even without the defendant’s cooperation, and the fact that there is no evidence of intentional or reckless disregard for the defendant’s rights, I rule that the drugs, currency and other physical evidence seized from the defendant’s apartment should not be suppressed.
ORDER
For the above reasons, the defendant’s motion to suppress the evidence from Padilla’s apartment is ALLOWED IN PART and DENIED IN PART. Any statements made by the defendant from the initial encounter between the defendant and the police at the bakery until his booking are suppressed. The observations made by the police while inside the defendant’s apartment and any physical evidence seized by the police are admissible.

 In Krisco Corp., supra, the Supreme Judicial Court applied the two-part reasonable expectation of privacy test to the circumstances of a dumpster located in an alley adjacent to the defendant’s business. Noting that the dumpster was under the control of and intended to be used exclusively by the business, and that its contents were not visible to persons passing by it, the court concluded that the defendants had demonstrated a subjective expectation of privacy in the contents of the dumpster and that it was one that society would regard as reasonable. 421 Mass. at 45.

 Of course, whether the public has access to the area may not always be the most important consideration. For example, in a business or commercial setting, employees may work in an area that is visible to the public through an open window or monitoring system even though not directly accessible to the public. Also, employees may be subject to surveillance by security officers or other forms of supervision that may diminish the expectation of privacy that they enjoy.

 Another possible basis for excusing the need for a warrant is exigent circumstances. There is no evidence of exigent circumstances to justify the warrantless entiy in this case. Drug buys had occurred at the defendant’s apartment on *282 several previous occasions but not at the battery. Therefore, it was not impracticable for the police to get an arrest warrant. Commonwealth v. Cast, 407 Mass. 891, 904 (1990). There also was no danger of evidence being destroyed if a warrant was procured. Commonwealth v. DiSanto, 8 Mass.App.Ct. 694, 700 (1979). Therefore, the warrantless entry into the bakery in order to arrest the defendant was unlawful.