**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph R. REDMON, Defendant–
Appellant.**

**No. 96–3361.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1997.

Decided June 27, 1997.

Richard N. Cox (argued), Office of the
United States Attorney, Urbana Division,
Urbana, IL, for Plaintiff–Appellee.

Kevin Michael Schad (argued), Cincinnati,
OH, for Defendant–Appellant.

Before BAUER, HARLINGTON WOOD,
JR., and ROVNER, Circuit Judges.

HARLINGTON WOOD, JR., Circuit
Judge.

The defendant, Joseph Redmon, deposited
his trust and his cocaine accessories in his
garbage cans. That was a mistake. The
police got to his garbage cans before the
garbage collectors. A subsequent search of
Redmon's house under a search warrant is-
sued on the basis of that garbage can evi-
dence produced 415 grams of cocaine.

Redmon was indicted for possession of
over 400 grams of cocaine with intent to
distribute in violation of 21 U.S.C.
§ 841(a)(1). After failing in his effort to
quash the search warrant and to suppress
the evidence, he entered a conditional guilty
plea reserving the right to appeal that deci-

sion. He does that now and also raises a sentencing issue.[1]

Redmon's defense is that he had an objectively reasonable expectation of privacy in the contents of his garbage cans. He argues that the warrantless search of those garbage cans led to the search warrant for his house and therefore violated his Fourth Amendment rights. The district court thought otherwise, and so do we.

## I. The Garbage Cans

Although the facts and circumstances of the garbage can searches are not disputed, they nevertheless must be examined. Redmon's two-story townhouse was situated at the end of a row of eight adjoining townhouses on the corner of two intersecting public streets in Urbana, Illinois. Redmon's front door, without a porch, faced east toward one street. It could be accessed only by a narrow walk extending from the front door around the corner of the townhouse to the connected garage and driveway. The garage faced north on a different public street. Redmon and his neighbor shared the common driveway which jointly served their double-garage structure. The driveway was twenty-five feet wide and extended about twenty-three feet to and across a public sidewalk, and then about another ten feet to the public street. The width of the driveway exceeded the distance from the garage to the public sidewalk. The garbage cans were located just outside the garage, on the common driveway, about half way between the garage doors. Redmon used one side of the garage and his neighbor the other. There were no yard fences or gates.

## II. Analysis of the Search

In arguing that he had an objectively reasonable expectation of privacy in his garbage cans, Redmon claims the cans were within the curtilage of his house. He relies on our case, *United States v. Hedrick*, 922 F.2d 396, 399 (7th Cir.1991), which stated that "garbage cans located twenty feet from the garage and approximately fifty feet from the back door of the house were technically within the curtilage of the house, in which privacy expectations are most heightened." In *Hedrick*, however, after analyzing *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), and various other cases, this court found no constitutional privacy under its particular facts. 922 F.2d at 399.

Moreover, *Hedrick* does not establish that Redmon's garbage cans were within the curtilage. Relying on *California v. Ciraolo*, 476 U.S. 207, 212, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986), the *Hedrick* court defined the curtilage as being an area intimately associated with the sanctity of the home and the privacy of life, both physically and psychologically, and an area where privacy expectations are most heightened. 922 F.2d at 398. The *Hedrick* court further noted that cases following *Ciraolo* recognized that the yard of a residential home is within the curtilage. *Id.* at 399. Thus, although the *Hedrick* garbage cans were located at the side of the driveway about half way between the sidewalk and the garage, the court considered them to be within the curtilage of the house. *Id.* However, as the government points out, in *United States v. Shanks*, 97 F.3d 977, 979 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1002, 136 L.Ed.2d 881 (1997), this court also found that garbage cans placed next to a detached garage and only twenty feet from the residence, but also close to the alley, were outside the curtilage with no reasonable expectation of privacy.

The district court in the present case did not make a finding about whether or not Redmon's garbage cans were within the curtilage. However, in the present case the garbage cans were just outside the garage, but close to and visible from the public streets and the sidewalks. Thus, Redmon's garbage cans, based on the record evidence, do not appear to us to have been within the curtilage, remembering curtilage is defined as an area intimately associated with the sanctity of the house and the privacies of life. In any event, under our cases *Hedrick* and *Shanks*, a curtilage finding is not controlling. *Shanks*, 97 F.3d at 979; *Hedrick*, 922 F.2d at

---

1. On September 18, 1996, Redmon was sentenced as a career offender to 188 months of imprisonment, six years of supervised release, and a $50 special assessment.

400. Other factors can be of greater weight. In this case, therefore, had the district court made a finding that the garbage cans were within the curtilage it would not have altered the result.

The *Hedrick* court noted that in *California v. Greenwood*, 486 U.S. at 40, 108 S.Ct. at 1628, the Supreme Court held that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection in an area found to be outside the curtilage of the home. 922 F.2d at 397. However, the court also noted that in *Greenwood*, the Supreme Court distinguished garbage cans from other containers within the curtilage of the home by noting that "plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public."[2] *Hedrick*, 922 F.2d at 399 (*quoting Greenwood*, 486 U.S. at 40, 108 S.Ct. at 1628). Some of those predators mentioned in *Greenwood*, animal and human, would likely also venture from a public street up a short driveway to check appealing garbage cans in plain view. Thus, the *Hedrick* court explained that the proper focus under *Greenwood* was whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable. *Id.* Accordingly, the *Hedrick* court said no bright line rule protecting all garbage within the curtilage was possible and explained that just because the garbage cans were within the curtilage did not necessarily mean that they were constitutionally protected. *Id.* at 400. In determining that the defendant had no protected privacy interest in the garbage cans, the *Hedrick* court considered other factors in addition to curtilage including the ready accessibility of the garbage cans to the public, the short distance between the garbage cans and the sidewalk, collection by a garbage service,

and particularly that the cans were clearly visible from the sidewalk. *Id.*

At first glance, the factual circumstances in this case might seem under *Hedrick* to tip the balance toward protected privacy. The garbage cans were placed close to the attached garage. However, there are also significant factual circumstances tipping the balance against protected privacy. Redmon's garbage cans, as we mentioned, were located on a driveway which he shared and used in common with his next-door neighbors, whoever they might be, and with their visitors and Redmon's visitors. Redmon had no control over his neighbors' invitees or others who might call on his neighbors.

■ Another significant fact is that the common driveway not only served as a driveway, but also served partly as a walk and connecting link for pedestrians to Redmon's front door walk. The front door walk provided the only access to Redmon's front door. For callers, therefore, the only route to Redmon's front door was from the public sidewalk on the north side, up the driveway to the garage and the garbage cans, and then left around the corner of Redmon's house to his front door going east.[3] Walks going to and from front door entrances, though on private property, are generally regarded as open to the public for use in connection with the house and its occupants. A person who walks up the walk to knock at someone's front door is not considered a trespasser. Rather, there is implied permission for the public to use the walk, or in this case the combination driveway-walk. In that sense Redmon's garbage cans were on or adjacent to the walk used by those calling on him or his neighbors and were readily accessible to the public. Those calling on Redmon or his neighbor necessarily passed close by the garbage cans without there being any basis for a legitimate objection by Redmon.

---

**2.** Animals are not familiar with the curtilage rule and the Fourth Amendment, and ordinarily cannot be relied on to abide by it. Urban raccoons are particularly skillful in ignoring the Fourth Amendment even when the garbage is secreted in a can with a lid. The attractive contents likely will soon be neatly spread out by ingenious and industrious raccoons for all to see. This court can expect to have some effect on police conduct,

but none on raccoons, dogs, and other animals who may be as interested in the garbage as the police. See *United States v. Shelby*, 573 F.2d 971 (7th Cir.1978).

**3.** Government photo Exhibits 2, 3 and 5 show Redmon's front door, the walk, the common driveway-walk, and the garbage cans.

To be sure, Redmon did not expect the contents of his garbage can to become known to the police or other members of the public. That alone is not enough to "give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation as objectively reasonable." *Greenwood,* 486 U.S. at 39–40, 108 S.Ct. at 1628–29. Our judgment is that a majority of the public is not prepared to accept Redmon's expectation as objectively reasonable.

In *Hedrick,* Judge Cudahy saw "no principled basis separating Hedrick's case [with the garbage cans half way down the driveway] from one in which garbage is kept on the back porch...." 922 F.2d at 401. (Curbside was admittedly a different situation.) Consequently, Judge Cudahy strongly dissented from the majority opinion. As Judge Cudahy's dissent demonstrates, reasonable room for disagreement obviously exists in these Fourth Amendment situations, particularly because the factual situations can vary widely. Indeed, it can be seen that each case reasonably turns on its own facts, obviating the necessity of trying to create a bright line rule to be applied to a myriad of garbage can circumstances. We see no fault with that practical approach. The district court here found no objective expectation of privacy that Redmon could reasonably have had in his garbage cans. We agree.

As a reviewing court, under *Ornelas v. United States,* — U.S. —, —, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), we review the district court's Fourth Amendment probable cause determinations *de novo.* We review findings of historical fact only for clear error giving due weight to inferences drawn from these facts by resident judges. *Id.* We have done that and find that in Redmon's circumstances there was no constitutionally protected interest in the contents of Redmon's garbage cans. Redmon's own carelessness in his use of his garbage cans in trying to dispose of the evidence of his criminal conduct caused his problem. He cannot now blame the vigilant police. Thus the search warrants for Redmon's house were valid. We find no error.

## III. The Sentencing Issues

At the time of Redmon's present offense, March 19, 1996, he was twenty-nine years old. He had a 1989 Illinois felony conviction for possession of cocaine with intent to deliver and a 1986 Illinois aggravated battery conviction. In the Sentencing Commission Enabling Act, Congress directed the Sentencing Commission to specify a sentence of imprisonment "at or near the maximum term authorized" for an adult defendant convicted of a violent crime or felony drug offense who had two such prior convictions. 28 U.S.C. § 994(h). To implement that congressional requirement, the Sentencing Commission promulgated § 4B1.1 of the Guidelines, entitled "Career Offender," which provides in pertinent part this qualification for that enhancement:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Amendment 506 to the Commentary to § 4B1.1 provides that "offense statutory maximum" means only "the maximum term of imprisonment authorized for the offense of conviction ... not including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record." U.S.S.G. § 4B1.1, Amendment 506. However, in *United States v. Hernandez,* 79 F.3d 584 (7th Cir.1996), we held that Amendment 506 is inconsistent with § 994(h)'s unambiguous statutory direction and therefore is not entitled to deference.

Following *Hernandez,* the district court applied § 4B1.1 to Redmon without reference to Amendment 506. As applied including the enhancements, § 4B1.1 raised Redmon's base offense level to 34 from 32. Despite our precedent, Redmon contends that the district court erred in refusing to follow Amendment 506 in applying § 4B1.1 to him. In support of his argument, he relies on *United States v. LaBonte,* 70 F.3d

1396 (1st Cir.1995), *rev'd,* —— U.S. ——, 117 S.Ct. 1673, —— L.Ed.2d —— (1997), in which the First Circuit upheld the validity of Amendment 506. At the time Redmon filed his appeal, the Supreme Court had granted certiorari in *LaBonte.* Thus, Redmon requested this court to hold its decision on his sentencing issue in abeyance, reasoning that if the Supreme Court affirmed *LaBonte,* it would be implicitly reversing *Hernandez,* and as such, he would be entitled to a new sentencing.

The Supreme Court recently issued its opinion in *LaBonte,* reversing the First Circuit and adopting a holding consistent with our opinion in *Hernandez.* Therefore, Redmon's appeal must fail, and his sentence is affirmed.

The district court is affirmed in all respects.

ROVNER, Circuit Judge, dissenting.

In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court held that an individual lacks an objectively reasonable expectation of privacy in garbage left for collection at the curb of a public street. Garbage left in that location, the Court explained, is outside the home's curtilage and thus is "readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id.* at 37, 40, 108 S.Ct. at 1627, 1628. Relying on *Greenwood,* a divided panel of this court subsequently found that a defendant lacked a reasonable expectation of privacy in garbage cans positioned midway down his driveway— approximately fifty feet south of his home, twenty feet south of his unattached garage, and twenty-five to thirty feet west of a public street. *United States v. Hedrick,* 922 F.2d 396, 397, 400 (7th Cir.), *cert. denied,* 502 U.S. 847, 112 S.Ct. 147, 116 L.Ed.2d 113 (1991). Although the majority in *Hedrick* found that the cans were "within the curtilage" of the defendant's home, it concluded that the garbage therein had been "knowingly exposed to the public" because the cans were only eighteen feet from a public sidewalk. *Id.* at 400. Yet that conclusion drew a sharp dissent

from the third member of the *Hedrick* panel, as well as the disapproval of a leading Fourth Amendment commentator. *See id.* at 401 (Cudahy, J., dissenting) ("The fact that the trash was clearly *within* Hedrick's property, not on the edge, distinguishes th[is] case from *Greenwood,* where the trash was left at curbside . . . ." (emphasis in original)); 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.6(c), at 594–95 n. 108 (3d ed.1996) (*Hedrick* majority not careful in applying *Greenwood* to a case where the garbage not at curbside, but plainly within the curtilage of the home). Today's majority opinion does *Hedrick* one better—it holds that Joseph Redmon lacked a reasonable expectation of privacy in garbage cans left immediately outside the door of his attached garage. *Greenwood* does not support such a startling conclusion; the Court dealt there only with garbage left at curbside, outside the curtilage of the defendant's home. *See Greenwood,* 486 U.S. at 37, 108 S.Ct. at 1627; *see also* LaFave, § 2.6(c), at 594 (discussing *Greenwood* ). My colleagues' conclusion also is directly contradicted by *Hedrick* itself, as both the majority and dissent in that case recognized that "garbage cans placed next to the house or the garage are *not* so accessible to the public that any privacy expectations are objectively unreasonable." 922 F.2d at 400 (emphasis added); *see also id.* at 401 (Cudahy, J., dissenting). Today's majority concludes otherwise, however, and I submit that its decision means that the citizens of this circuit may only protect their garbage from warrantless police searches by storing it inside their homes. Because I cannot agree that our privacy interests are so limited, I must respectfully dissent.

I.

I begin with the curtilage question, which in my view represents the majority's initial misstep. Although the district court did not resolve the issue, even the government does not assert that Redmon's garbage cans were outside the curtilage of his home.[1] Despite that, my colleagues suggest that the cans

---

1. Indeed, consistent with the case law in this area, the government seems to assume that the cans were within the curtilage. (*See* Govt. Br. at 11–12.)

were outside the curtilage, ostensibly because they were "close to and visible from the public streets and the sidewalks." (*Ante* at 1037.) Yet the same was true in *Hedrick*, and even the majority there recognized that the garbage cans were within the curtilage of the defendant's home. 922 F.2d at 399. It is difficult for me to understand, in fact, how *Hedrick's* curtilage could extend at least fifty feet from his home and twenty feet from an unattached garage while *Redmon's* curtilage seems to have ended at his garage door.

Perhaps the evident problem stems from the test employed to define *Redmon's* curtilage here. My colleagues correctly observe that a home's curtilage encompasses the "area intimately associated with the sanctity of the home and the privacy of life" (*ante* at 1037; *see also United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987)), but they then focus only on whether the cans were situated in an area "close to and visible from" the public streets and sidewalks. (*Ante* at 1037.) That analysis ignores the other factors relevant to the curtilage inquiry, the most important here being "the proximity of the area claimed to be curtilage to the home." *Dunn*, 480 U.S. at 301, 107 S.Ct. at 1139. Indeed, the Supreme Court itself has assumed that the area immediately adjacent to a private home is included within its curtilage. *See Dow Chem. Co. v. United States*, 476 U.S. 227, 235, 106 S.Ct. 1819, 1825, 90 L.Ed.2d 226 (1986); *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986). Yet under the majority's view, even that area would not give rise to heightened privacy interests so long as it was "close to and visible from" the public streets and sidewalks. (*Ante* at 1037.) It would thus appear from the majority's discussion that *Redmon's* home had no curtilage at all because his entire yard was visible from the public byways. Indeed, yards and driveways typically are visible from streets and sidewalks, but that has not stopped this and other courts from finding those areas to be within a home's curtilage. *See Hedrick*, 922 F.2d at 399 ("the yard of a residential home is within the curtilage"); *United States v. Kramer*, 711 F.2d 789, 793–94 (7th Cir.) (assuming that front yard of home was within the curti-

lage), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983); *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1297 (7th Cir.1976) (curtilage extends out seventy-five feet from the home), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977); *see also, e.g., United States v. Depew*, 8 F.3d 1424, 1426–28 (9th Cir.1993) (driveway extending from unattached garage located fifty to sixty feet from the defendant's home within the curtilage); *United States v. Magana*, 512 F.2d 1169, 1170 (9th Cir.) (driveway within curtilage of the defendant's home), *cert. denied*, 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975).

Although these authorities plainly indicate that *Redmon's* garbage cans were within his home's curtilage, the majority intimates that *United States v. Shanks*, 97 F.3d 977, 979 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1002, 136 L.Ed.2d 881 (1997), supports its contrary conclusion. (*Ante* at 1037.) Yet the only similarity between this case and *Shanks* is a purely cosmetic one. The garbage cans in each case were adjacent to the defendant's garage, but the unattached garage in *Shanks* was located some twenty feet from the defendant's condominium, whereas *Redmon's* garage was attached to his home. More importantly, the cans in *Shanks* were situated on a narrow strip of land that ran between the garage and a public alley. 97 F.3d at 978. Because the cans were therefore adjacent to the alley as well as to the garage, we found the circumstances in *Shanks* "not significantly distinguishable from the situation in *Greenwood*," where curbside garbage was found to be outside the curtilage of the defendant's home. *Id.* at 979. By contrast, no one has suggested that the circumstances in this case can be likened to those in *Greenwood*. Redmon did not place his garbage cans at the curb of a public street or a public alley; he placed the cans just outside his garage door, twenty-three feet from a public sidewalk and even further from the public street. Those cans were plainly within the curtilage of *Redmon's* home, and I therefore have no doubt that he had a heightened expectation of privacy in the cans' contents.

## II.

On the ultimate question of whether Redmon's expectation of privacy in the contents of his garbage cans was objectively reasonable, my colleagues acknowledge that under *Hedrick*, it seemingly was. (*Ante* at 1038.) I could not agree more. As I noted earlier, both the majority and dissenting opinions in *Hedrick* recognized that a homeowner has a reasonable expectation of privacy in garbage cans placed directly adjacent to a home or garage. *See* 922 F.2d at 400; *see also id.* at 401 (Cudahy, J., dissenting). The *Hedrick* majority, in fact, described the circumstances there as presenting "a middle ground in which the answer to [the expectation of privacy] question [was] not self-evident." 922 F.2d at 400. That is because the garbage cans in *Hedrick* were located between an unattached garage and a public sidewalk that were situated some forty feet apart. *Hedrick* described the easier cases, those falling at either end of the relevant spectrum, in the following way:

> If the garbage is placed at the curb, the public has ready access to it from the street, and in fact can be expected to utilize that ability. On the other hand, garbage cans placed next to the house or the garage are not so accessible to the public that any privacy expectations are objectively unreasonable.

*Id.*[2] The circumstances in *Hedrick* thus fell between these two extremes and presented a more difficult case. The *Hedrick* majority ultimately resolved its quandary by concluding that the defendant lacked a reasonable expectation of privacy in cans located so far from the garage and so close to a public sidewalk, but in doing so, the court observed that "the reasonableness of the expectation [of privacy] will increase as the garbage gets closer to the garage or house." *Id.* The garbage cans in this case could not get any

closer to Redmon's attached garage—they were almost touching its wall. Under *Hedrick*, then, Redmon clearly had an objectively reasonable expectation of privacy in the contents of those cans.

My colleagues nonetheless avoid this obvious conclusion by emphasizing two facts that, in their view, are sufficient to obliterate Redmon's privacy interest: first, that Redmon's driveway was connected to that of his neighbor so that his garbage cans were readily accessible to the neighbor and his guests; and second, that a sidewalk leading to Redmon's front door could be reached only by traversing the driveway, thereby making the cans accessible to any visitor to his home. (*Ante* at 1038–39.) In my view, neither of these facts would make Redmon's expectation of privacy objectively unreasonable.

Let us first consider that Redmon's driveway was connected to that of his neighbor. I can agree that as a result of this fact, Redmon's cans at least were accessible to the neighbor and the neighbor's guests, but that is only significant if, as a society, we think Redmon should have expected that his neighbor or his neighbor's guests would stray over to his side of the driveway, pry off the lids of his closed garbage containers, and rifle through his garbage. *See Greenwood*, 486 U.S. at 39–40, 108 S.Ct. at 1628–29 (test is whether society would accept as reasonable the defendant's subjective expectation of privacy). These garbage cans, after all, belonged to Redmon; they were not cans shared by Redmon and his neighbor. *Cf. United States v. Dunkel*, 900 F.2d 105, 106–07 (7th Cir.1990) (no reasonable expectation of privacy in dumpster located in parking lot of office building shared by seven other tenants), *vacated on other grounds*, 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991). It is possible that my colleagues simply are less trusting of neighbors, but I would not

---

**2.** Similarly, in rejecting the argument that Hedrick lacked a reasonable expectation of privacy because he intended to convey his garbage to a collector, the court observed yet again that a heightened privacy interest would exist if the cans were adjacent to the garage:

> A determination, however, that garbage placed in cans for ultimate collection is unprotected by the Fourth Amendment would allow police

officers to inspect cans placed next to the garage or the house itself without any showing of probable cause or any warrant, and without regard to the accessibility of the cans to the public as a whole. This result would be inconsistent with the purpose of the Fourth Amendment to protect the home and the area surrounding it from arbitrary searches.

*Id.* at 399; *see also Shanks*, 97 F.3d at 980.

expect any neighbor or guest to disturb garbage placed in a closed container so close to Redmon's home. And I am confident that a majority of citizens would agree with me. Although some in this day and age may believe that Redmon should have erected a fence down the middle of his driveway in order to preserve his legitimate expectation of privacy in cans placed there (" 'Good fences make good neighbors,' " as it were),[3] I believe that a majority of this country's citizens would expect Redmon's garbage to be safe from a neighborly intrusion. I therefore do not find it all that significant that Redmon's driveway was connected to that of his neighbor.

I also am not persuaded that the police were entitled to conduct a warrantless search of Redmon's garbage simply because his driveway linked the public sidewalk to a walkway leading to his front door. Initially, I find it necessary to correct the erroneous impression my colleagues leave that any visitor to Redmon's residence was required to pass directly by the cans in order to reach the front door. (*See ante* at 1038 ("the only route to Redmon's front door was from the public sidewalk on the north side, up the driveway to the garage and the garbage cans, and then left around the corner of Redmon's house to his front door going east.").) The record actually reflects that the walkway leading to Redmon's door was connected to the north side of the driveway at a point approximately twelve feet from the garbage cans. Thus, the cans did not stand in the path of any caller to Redmon's home; rather, a caller intent on disturbing Redmon's garbage would be required first to approach Redmon's home and then, upon seeing the cans, to walk twelve feet in the opposite direction in order to reach them.

That is a technical point, however, and my disagreement with the majority runs deeper. Without citation of supporting authority, my colleagues reason that the location of the walk defeats any expectation of privacy in the garbage cans merely because the walk invites people to pass "close by" those cans. (*Ante* at 1038.) Apparently, then, Redmon also would lack a reasonable expectation of privacy in the contents of the cans if they were kept just outside his front door, where he could keep a constant eye on them, again because of their proximity to the walkway used by Redmon's visitors. Nor, under the majority's analysis, would Redmon have a reasonable expectation of privacy in the contents of a mailbox positioned next to his front door, again because callers to the front door (who are not considered trespassers, we are reminded (*id.*)) would be required to walk in close proximity to that mailbox.

I am unable to accept this line of reasoning. Granted, Redmon would lack a reasonable expectation of privacy in any belonging that could be plainly viewed from the walkway (for example, contraband that was clearly visible from the walk through his front window, as in *United States v. James*, 40 F.3d 850, 861–62 (7th Cir.1994), *vacated in part on other grounds*, —— U.S. ——, 116 S.Ct. 664, 133 L.Ed.2d 515 (1995)),[4] but the contents of his garbage cans, of his mailbox, or of any other closed container would not be in plain view to a caller strolling up the driveway to the walk and ultimately to Redmon's front door. *See Hedrick*, 922 F.2d at 399 (case law indicates that a closed container at the side of a driveway "could not be searched [without a warrant] because its contents are not in plain view and have not been knowingly exposed to the public"). The majority fails to acknowledge that a visitor to

---

**3.** Robert Frost, "Mending Wall," The Poetry of Robert Frost 33–34 (1969). Frost, of course, was no fan of fences separating neighbors, as evidenced by the poet-narrator's retort to the statement quoted in the text:

> "*Why* do they make good neighbors? Isn't it Where there are cows? But here there are no cows. Before I built a wall I'd ask to know What I was walling in or walling out, And to whom I was like to give offense. Something

there is that doesn't love a wall, That wants it down."

*Id.* (emphasis in original).

**4.** *See also* LaFave, § 2.3(f), at 506–08 ("when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.").

Redmon's front door not only would be required to walk twelve feet out of his way in order to reach the garbage cans, but that he also would then be required to open the closed cans as well as the closed garbage bags therein before he would have access to Redmon's garbage. In my view, it simply is not reasonable to expect that a visitor to Redmon's front door would engage in that type of conduct. *See* LaFave, § 2.6(c), at 594–95 (police "must conduct themselves as would an ordinary social visitor to the premises. That hardly includes rummaging through the garbage cans of one's host."). The possibility that any visitor may actually do so is insufficient to defeat Redmon's privacy interest, just as a series of burglaries to Redmon's home would be insufficient to eliminate the expectation of privacy he retains there. *See Hedrick,* 922 F.2d at 400. In sum, then, the majority's reliance on the proximity of the cans to Redmon's front walk, a fact not even mentioned by the lower court or relied upon by either party before this court, is insufficient to deprive Redmon of his objectively reasonable expectation of privacy in the contents of his garbage cans.

For these reasons, I do not view the two facts cited by my colleagues as significant enough to overcome this court's view in *Hedrick* that "garbage cans placed next to the house or the garage are not so accessible to the public that any privacy expectations are objectively unreasonable." 922 F.2d at 400. As I indicated earlier, by emasculating the concept of curtilage, the majority essentially leaves Redmon no choice but to store his garbage within his home. That would seem to be the only private area remaining to him, for the majority tells us today that Redmon lacked an objectively reasonable expectation of privacy in a closed container left just outside his garage door, and its reasoning indicates that the result would be the same had the cans been left in the yard, on the front walk, or even on the porch. And the only reason justifying this extraordinary restriction of Redmon's Fourth Amendment interests is the court's apparent unwillingness to require law enforcement authorities to take the simple step of securing a search warrant before encroaching upon the valued zone of privacy in which these cans were situated. In light of today's decision, I can offer but one word of advice to the citizens of this circuit—be prepared to have the authorities rummaging at random through garbage stored virtually anywhere on your property, or barring that, be prepared to hold your noses.

I respectfully dissent.